UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

NOV - 3 1999

CLARENCE MADDOX
CLERK, U.S... ...T. / MIA

FRANCOISE SAMEDI,

    Plaintiff,

vs.

MIAMI-DADE COUNTY, FLORIDA,
a political subdivision of the State of
Florida, DONALD GODWIN,in his an
official and individual capacity, LEM
JONES, in his official and individual,
capacity, and DAVID WHITE, in his
official and individual capacity,

    Defendants.

_____/

CASE NO.: 98-3055-
CIV-HOEVELER

MAGISTRATE JUDGE:
TURNOFF

**SECOND
AMENDED COMPLAINT
<u>JURY TRIAL DEMANDED</u>**

Plaintiff, FRANCOISE SAMEDI (hereinafter "SAMEDI"), sues Defendants, MIAMI-
DADE COUNTY, FLORIDA, a political subdivision of the State of Florida, DONALD
GODWIN (hereinafter "GODWIN"), in his official and individual capacity, LEM JONES
(hereainafter "JONES"), in his official and individual capacity, and DAVID WHITE
(hereinafter "WHITE"), in his official and individual capacity, and states as follows:

<u>**NATURE OF THE ACTION**</u>

1. This action is for damages in excess of $50,000.00, for declaratory judgment and
for injunctive relief arising from GODWIN's and JONES' sexual assault and sexual
harassment of SAMEDI, retaliation by GODWIN, JONES and COUNTY supervisors against
SAMEDI for her filing (1) a charge of discrimination based upon sex, national original and
retaliation, (2) a police report regarding sexual assault committed upon her personal by

GODWIN and JONES, and (3) her participation in the sexual harassment investigation against GODWIN and JONES.

2. SAMEDI was subjected to continuous and repeated sexual harassment and sexual assaults, physical and emotional abuse by both GODWIN and JONES under color of state law during COUNTY working hours, on COUNTY property and in COUNTY vehicles, in utter disregard for the rights guaranteed her under the First and Fourteenth Amendments of the United States Constitution, in violation of Title VII of the Civil Rights Act of 1964, as amended, Title 42 U.S.C. ss.2000e et seq., Title 42 U.S.C. ss.1983, 1985(3), 1986, 1988, 13981, and the Florida Civil Rights Act, Chapter 760, Florida Statutes.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 42 U.S.C s.2000e-f(3) and 28 U.S.C. ss.1331, 1343 and 1367.

4. SAMEDI has filed both oral and written charges against the COUNTY internally with the COUNTY's Fair Employment Practices Department, the Florida Commission of Human Relations, Metro-Dade Police Department, Tri-State Temp Service, the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), and the Florida Department of Insurance.

5. On or about September 8, 1997, SAMEDI filed a Charge of Discrimination against Miami-Dade COUNTY, Department of Solid Waste Management (hereinafter "DEPARTMENT") alleging discrimination based upon sex, national origin, and retaliation. A copy of SAMEDI's charge is attached hereto as Exhibit "A." Thereafter, by letter dated September 9, 1998, the EEOC issued a Notice of Right to Sue, a copy of which is attached hereto as Exhibit "B." SAMEDI initiated this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue.

6. Pursuant to 28 U.S.C. s.13901, venue is proper in this District because the unlawful conduct alleged herein occurred with this District and the plaintiff and defendants reside in this District.

## PARTIES

7. SAMEDI is a female of Haitian national origin and a resident of Miami-Dade County, Florida, and at all times relevant to this matter, an employee of the COUNTY.

8. COUNTY is a political subdivision of the State of Florida, with more than 500 (category D) employees charged with administering county services and operating county budget in and for Miami-Dade County, Florida. COUNTY's organizational structure includes the Department of Solid Waste Management where SAMEDI, GODWIN, JONES and WHITE are employed.

9. GODWIN is a male resident of Miami-Dade County, Florida, and, at all times relevant to this matter, held a supervisory position in the COUNTY's Department of Solid Waste Management. As a supervisor, GODWIN had powers and authority over SAMEDI and other employees which included but was not limited to issuing assignments, discretion in decision-making, knowledge and compliance of laws, rules and regulations effective in COUNTY government, and to determine vacation and sick relief. GODWIN is sued in his individual capacity.

10. JONES is a male resident of Miami-Dade County, Florida, and, at all times relevant to this matter, held a supervisory position over SAMEDI and other temporary employees within the DEPARTMENT which included but was not limited to transporting employees to and from work sites, determining lunch periods, issuing directives to temporary employees given to him by upper level supervisors. JONES is sued in his individual capacity.

11. WHITE is a male resident of Miami-Dade County, Florida, and, at all times relevant to this matter, was the Chief of Trash with final decision making powers over the COUNTY's DEPARTMENT's Trash Division. WHITE is sued in his individual capacity.

## FACTUAL BACKGROUND

12. GODWIN has been employed with the COUNTY since 1975. He has served as a Trash Crane Operator, Waste Supervisor I, and acting Waste Supervisor II. During the relevant time period, GODWIN had direct and immediate supervisory authority over SAMEDI including the discretion to tell her to go home, to work overtime, to accompany him to different work sites, where to work and with whom. GODWIN told SAMEDI and she believed that GODWIN had the power to fire her and hire her to a permanent position with the COUNTY and, in exchange for forced sexual favors and her silence, GODWIN made promises not to fire her and to hire her permanently.

13. JONES has been employed with the COUNTY since 1969. He was initially hired as a Trash Truck Driver I and has served as Trash Truck Driver II, Trash Crane Operator, and

Acting Waste Supervisor I. As a Trash Crane Operator, JONES is a lead worker responsible for supervising temporary and lower level employees while out in the field. As such, JONES had the authority to direct SAMEDI to accompany him to different locations within the COUNTY in COUNTY vehicles. JONES told SAMEDI and she believed that JONES had the power to her fire and hire her to a permanent position with the COUNTY and, in exchange for forced sexual relations and her silence, JONES made promises not to fire her and to hire her permanently.

14. SAMEDI has been employed by the COUNTY since 1993. She was born in the country of Haiti and arrived in the United States in April 1992. When she arrived she did neither spoke nor understood English. Though her knowledge and use of the English language has improved, it remains limited. SAMEDI has worked for the COUNTY in the DEPARTMENT's Division of Trash as a temporary employee through various temp agencies including Tri-State. More than once, SAMEDI has applied for but has never obtained the status of permanent employee.

15. SAMEDI has been subjected to numerous incidents of unlawful conduct by the COUNTY, GODWIN, JONES, WHITE and others including but not limited to the following:

a. From the beginning of SAMEDI's employment with the COUNTY until approximately August 1997, she experienced sexual assault, sexual harassment, sex discrimination, and discrimination based upon national origin. There were so many sexual encounters and SAMEDI was neither aware of nor received a copy of the COUNTY's sexual harassment policy, if any.

b. In September 1992, SAMEDI worked under the direct supervision of JONES and he wanted her to work only for him. On many occasions, from September 1992 to August 1997, JONES would forcefully push SAMEDI into the COUNTY trash truck, put his fingers in SAMEDI's vagina, and have forced sex with her without her consent. JONES has caused SAMEDI to fall down and her back, among other things, would hurt. JONES would hit SAMEDI with his hands and fists all over her body. JONES would forcibly remove SAMEDI's clothing and put his penis into her vagina, which caused pain and was done without her consent.

c. During the earlier years of her employment with the COUNTY, SAMEDI did not speak and did not understand English. During the sexual encounters, JONES

4

would not say anything to her, he would merely call out her name while touching her private parts and while having forced sex with her which caused her pain was without her consent. As time passed, SAMEDI began to speak and understand English on a limited basis. SAMEDI understand JONES to threaten her that "if you tell anybody about this, I will fire you. I drive the crane and I am your boss; you have no rights." Also, JONES has told SAMEDI that "in order to get job with COUNTY, you let me do this to you." JONES had unprotected and nonconsensual sex with SAMEDI. SAMEDI did not tell anyone about what was happening to her because she did not speak English and did not trust anyone. She felt she had no one to tell; she felt ashamed and embarrassed.

d. Repeatedly and continuously during SAMEDI's employemnt with the COUNTY, while working on the crane with JONES, JONES would pull down his pants and fight with SAMEDI to have sexual intercourse. SAMEDI, after learning a little English, told JONES "no, no, no!" But he would threaten SAMEDI by saying, "don't tell anyone or I will fire you; you have no rights."

e. SAMEDI feared she would lose her job and income she sends to her family in Haiti. She also heard JONES on many occasions tell everyone at the work site at 58th Street about the sexual things he did to SAMEDI. SAMEDI would feel embarrassed but she really did not fully understand what he was saying about her and she would just walk away alone.

f. In 1995, while Carl Stringer was Supervisor I, he called a meeting with the temporary employees. After the meeting, JONES said to be, "stupid Haitian, you don't know how to speak English; fucking Haitian don't talk English, talk shit." On that day, Mr. Stringer directed SAMEDI to work with JONES. SAMEDI was upset and told Mr. Stringer, "I no work with JONES no more; JONES said to me "fucking Haitian talk shit no talk English." Later that day, Mr. Stringer reassigned me from JONES' crane to the clean up crew which pleased SAMEDI. Shortly thereafter, Mr. Stringer was promoted from Trash Supervisor I to a Garbage Supervisor II and he was no longer over SAMEDI. That is when Coleman Tyler became acting Trash Supervisor I, and WHITE was Supervisor II over SAMEDI.

g. Once in 1995, JONES drove the COUNTY trash truck and took SAMEDI to a motel without SAMEDI's knowledge and consent. The motel was located somewhere on northwest 27th Avenue and 7th Street. It was lunchtime. JONES said to SAMEDI, "I go to restaurant and get you lunch." SAMEDI recognized that the building did not appear to be a restaurant. JONES then told SAMEDI, "come her Francine." SAMEDI went to him and JONES gave her a fight and forced her to have sex with him in a motel room. JONES caused SAMEDI pain during the sexual encounter.

h. Once in 1996, SAMEDI had worn sandals to work and Mr. Tyler told her to go home and change her shoes. Mr. Tyler directed GODWIN, who had been transferred from the south station to 58th Street, to take SAMEDI home in the COUNTY car. At that time, SAMEDI lived on northeast 131st Street and 7th Avenue. Before taking her to her residence, GODWIN took SAMEDI to a remote area and began to push and pull on her. GODWIN said, "I am your boss and supervisor over you, fucking Haitian; if you tell somebody, I will fire you!" On that day, GODWIN forced SAMEDI to have sex with him in the COUNTY car thereby causing pain and was without her consent. After he was finished, he took SAMEDI home and said, "Francine, you stay home and I will pay you for a full day." SAMEDI told no one about the incident because she feared she would be fired and she felt ashamed and embarrassed.

i. One day in 1997, Eusebio Carbo, supply house man, did not report to work. SAMEDI, who at the time was assigned to clean the offices at 58th Street site, asked GODWIN for cleaning supplies. While both JONES and SAMEDI were in the "box house" where the supplies are kept, GODWIN fought with SAMEDI and forced her to have oral sex and sexual intercourse with him. GODWIN pulled SAMEDI by the hair and forced her mouth onto his penis and told her, "suck it, bitch; you motherfucking Haitian, or I will fire you! You have no rights." GODWIN caused SAMEDI pain during the sexual encounter. SAMEDI was thereafter reassigned by GODWIN to work with JONES.

j. In May of 1997, GODWIN wanted to take SAMEDI home. SAMEDI refused his offer and told him that she has a husband which really was her live-in

boyfriend. SAMEDI had not told her boyfriend about the problems she was encountering on the job at the COUNTY because she was too embarrassed and ashamed. GODWIN than asked SAMEDI's co-worker and friend, Denise Alabre, Waste Attendant at the 79th Street dump, could he go to her house with SAMEDI. Sometimes Denise takes SAMEDI home. Denise told "no" because her husband was home. On that day, Denise took SAMEDI to her home and from there SAMEDI walked to her own residence. Denise had previously told SAMEDI about her past and how she had had sex with Bobby Tomlin, former Chief of Trash, and others for two years before she was hired permanently by the COUNTY. Denise further explained to SAMEDI that, "you have sex and you get job with COUNTY." SAMEDI did not tell Denise what had been happening to her.

k. On or about, June 25, 1997, the clean up crew SAMEDI worked with worked overtime under the supervision of Ron Relaford, Waste Attendant II. On that day, GODWIN picked SAMEDI up and took her to a remote place somewhere near northwest 215th Street between 47th Avenue and 27th Avenue near the expressway. There were no house or businesses nearby. GODWIN parked the COUNTY vehicle near a lot of debris that included discarded furniture. GODWIN directed SAMEDI to get out of the vehicle. GODWIN then with force pushed SAMEDI down and held her. GODWIN hit SAMEDI and pulled his pants off. GODWIN pulled SAMEDI's hair and pulled her clothes off and forced her to have oral sex and sexual intercourse with him which caused her pain and was without her consent. GODWIN then called SAMEDI bad names and said, "I am the boss man over you; I am your supervisor; if you tell somebody about this, I'll fire you, you fucking Haitian." During this encounter, SAMEDI told him, "no, no, Don, no, no." GODWIN has required SAMEDI to accompany him in the COUNTY vehicle and took her to this same location at least three times—once from Mr. Relaford's crew and twice from JONES' crew. On this day and in the past, GODWIN promised SAMEDI that he would have her hired permanently.

l. GODWIN has picked SAMEDI up from the crane's location many times during her employment with the COUNTY and has taken her to other areas including the home of his friend named "Buck." Buck lives on or near northwest 56th Street and

24th Avenue near the Joe Caleb Center.  GODWIN has never used protection with having sex with SAMEDI.

m.  On many occasions while SAMEDI worked cleaning the office at 58th Street site, GODWIN would force her to have oral sex and intercourse without her consent.  GODWIN has forced SAMEDI to have sex in the COUNTY office bathroom and in the COUNTY's box house.

n.  On or about August 14, 1997, while SAMEDI was cleaning the office bathroom, GODWIN came into the bathroom, shut the door and said, "suck that for me, Francine, suck."  He was pulling SAMEDI's hair and pointing at his genitals.  SAMEDI told him, "no, Don, somebody come; please no.!"  GODWIN replied, "nobody could see; suck Francine, suck."  There are no windows in the bathroom.  On this day, GODWIN had oral sex and painful sexual intercourse with force and without my consent.  GODWIN further promised SAMEDI that he would have her hired permanently.

o.  On or about August 15, 1997, GODWIN asked SAMEDI, "Francine, where do you want to work?"  SAMEDI replied, "I have no problem, I work where ever they send me."  On this day, Denise told me that GODWIN had told her to tell SAMEDI that "it is not my fault Francine was not hired; I sent her name downtown; please tell her not to be mad with me."

p.  Another permanent COUNTY employee saw JONES do unlawful things on the job including paying a street woman money to have sex with Mr. Wright's nephew on the COUNTY truck.

q.  JONES has had a COUNTY employee who is mentally retarded to SAMEDI money and even had this person to take off all of his clothes under the false belief that SAMEDI was going to have sex with him.

r.  On or about August 25, 1997, Alonzo Wright, Supervisor II, told certain temp employees to go home because temps do not work on Mondays.  However, on that day, the COUNTY supervisors let temps work with less seniority than SAMEDI with only two weeks to a month experience.  SAMEDI felt this was unfair.  She told Mr. Wright that "if temps don't work then all temps don't work."  SAMEDI and two of her co-workers, Jennie Gamble and Bertha Gomez, decided to go talk with WHITE

about their concerns. WHITE told us to wait after he summons Mr. Wright. SAMEDI and the other two employees waited about one hour and were then told to leave. SAMEDI and the other two employees then decided to go talk with Andrew Wilfork, Director of the Department of Solid Waste Management, at the administrative building (Kroger) located at 8675 N.W. 53rd Street. SAMEDI and the other two employees had decided they would file charges regarding sexual harassment by COUNTY supervisors and the unfair treatment of temp employees. They were told that Mr. Wilfork was on vacation and advised to talk to Pamela Payne, COUNTY's Manager of Human Resources.

16. Also, during the meeting with Ms. Payne on August 25, 1997, SAMEDI was hesitate and apprehensive about telling what had been happening to her. SAMEDI was urged by her co-workers to tell everything and while alone with Ms. Payne, SAMEDI told her about what GODWIN and JONES had done to her sexually and physically. Ms. Payne then call WHITE to her office and had SAMEDI to repeat what she had said to Ms. Payne while they were alone. Ms. Payne then stated that she need an interpreter for SAMEDI and that she would reschedule SAMEDI to come back. SAMEDI thought she was to go back to Ms. Payne's office the next day but was told b Mr. Edwards that she was scheduled to go on August 28, 1997. He then advised SAMEDI to take another Haitian co-worker with her because SAMEDI did not speak nor understand English very well. Then, on August 28th, SAMEDI was told to go back on August 29, 1997. SAMEDI became very fearful and decided to retain an attorney who advised her that she had rights.

17. During the relevant time period, SAMEDI told a permanent COUNTY employee that GODWIN and JONES had been having rough sex with her without her consent. SAMEDI blurted this out due to the pain she was experiencing in the abdominal/pelvis area. This employee saw SAMEDI taking medication and holding her stomach in pain.

18. On or about August 29, 1997, SAMEDI accompany with her attorney reported to the scheduled appointment at the administrative building. However, Ms. Payne and Juan De Ona, COUNTY's Fair Employment Practices Specialist cancelled upon becoming aware that SAMEDI had an attorney.

19. On or about September 8, 1997, SAMEDI accompany with her attorney reported to an appointment at the Stephen P. Clark Center, 111 N.W. 1st Street, Suite 2720. At that

meeting, SAMEDI gave a sworn statement to COUNTY high ranking employees including Ms. Payne, Mr. De Ona, William X. Candela, Assistant County Attorney. An interpreter was present.

20. On or about September 8, 1997, SAMEDI filed an Affirmative Action Complaint with the COUNTY alleging that GODWIN and JONES has subjected SAMEDI to sexual harassment and sexual battery, and that both GODWIN and JONES had offered SAMEDI a permanent position with the COUNTY. Mr. De Ona signed as the interviewer. SAMEDI has not received notice of the disposition hereof. A copy of the SAMEDI's Affirmative Action Complaint is attached hereto as Exhibit "C."

21. On or about September 8, 1997, SAMEDI filed an EEOC charge of discrimination against the COUNTY, alleging that GODWIN and JONES had unsolicited, forced and nonconsentual sexual intercourse and subjected SAMEDI to other unlawful treatment. See Exhibit "A."

22. On or about September 12, 1997, SAMEDI filed a report with the COUNTY's Police Department alleging that GODWIN and JONES sexually assaulted her. A copy the COUNTY's police report is attached hereto as Exhibit "D."

23. After interviews with numerous witnesses, the COUNTY's police department and the COUNTY's State Attorney's office failed to prosecute based upon their findings that the sexual assaults were "one-on-one with no witnesses;" "that the victim [SAMEDI] made a delayed disclosure;" that "the victim's [SAMEDI's] statements were inconsistent and there is no corroboration;" and that "the subjects have denied the victim's [SAMEDI's] allegations.

24. SAMEDI believes that she was discriminated against by the COUNTY's police department, and that the COUNTY is protecting GODWIN, JONES and WHITE which constitutes a policy, practice or custom which is endorsed, condoned, accepted and effectively sanctioned by the COUNTY.

25. Upon information and belief, JONES, over the course of his employment with the COUNTY, has been disciplined for various reasons by the COUNTY, as follows: nine (9) suspensions, five (5) reprimands, four (4) counseling notices, three (3) warning notices, and two (2) disciplinary action notices.

26. Upon information and belief, the COUNTY's supervisors including GODWIN, JONES and WHITE have a long history of sexually harassing female employees including

SAMEDI. COUNTY supervisors, in some instances, have engaged in sexual relationships with female employees which have even resulted in pregnancies.

27. Upon information and belief, COUNTY supervisors including GODWIN, JONES, and WHITE belief that they are immune from discipline based upon this long history of sexually harassing female employees.

28. Other female employees have filed charges against COUNTY supervisors alleging sexual harassment but upon information and belief, COUNTY supervisors including GODWIN, JONES and WHITE, were rarely, if at all, disciplined. This constitutes a policy, practice or custom which is endorsed, condoned, accepted, and effectively sanctioned by the COUNTY.

29. Since SAMEDI has filed her internal complaint, made a report to the Metro-Dade County Police Department and filed an EEOC complaint alleging the unlawful conduct of GODWIN, JONES and WHITE, SAMEDI has been retaliated against by the all of the defendants and other COUNTY employees.

30. She has worked as a temporary COUNTY employee for approximately five (5) years and has not been hired permanently. The COUNTY has retained her in such a position for so long and has promoted other COUNTY employees with less seniority. SAMEDI believes that is if she qualifies to serve the COUNTY as a temp employee performing the same tasks as a permanent employee, she also qualifies to serve the COUNTY as a permanent employee with benefits. On more than one occasion during the course of her employment, SAMEDI has applied for a permanent position with the COUNTY. WHITE and the COUNTY have denied SAMEDI a permanent position based upon her national origin and her inability to speak and write fluent English. As a result, SAMEDI believes the COUNTY has deprived SAMEDI of an economic benefit and has caused loss of income, among other things, in retaliation of SAMEDI's filing charges against the COUNTY.

31. Many female COUNTY employees have been subjected to sexual harassment and possible assault by COUNTY supervisors but most are fearful in reporting such incidents because of the COUNTY's policy, practice or custom which is endorsed, condoned, accepted and effectively sanctioned by the COUNTY. These victims believe that by reporting the unlawful conduct they would be punished by termination.

32.  The COUNTY knew or should have known that GODWIN and JONES were sexually harassing and sexually assaulting SAMEDI, and that WHITE and other COUNTY high ranking employees failed and refused to fully investigate and discipline the perpetrators. This too constitutes a policy, practice or custom which is endorsed, condoned, accepted and effectively sanctioned by the COUNTY.

33.  Upon information and belief, the COUNTY's DEPARTMENT has recently, after the filing of formal charges by SAMEDI and other COUNTY employees, commenced instituting training on sexual harassment.  It is not known whether GODWIN, JONES and WHITE or any of the other COUNTY supervisors herein referred to were required to attend.

34.  GODWIN's sexual advances, sexual assault and inappropriate comments of a sexual nature and regarding SAMEDI's national origin, and WHITE's inaction to investigate and administer discipline are so widespread and have been ongoing for so long as to constitute a policy, practice or custom which is endorsed, condoned, accepted and effectively sanctioned by the COUNTY.

35.  Upon information and belief, SAMEDI has undergone a medically required necessary hysterectomy as a direct and proximate cause of the sexual assaults committed by GODWIN and JONES.  This medical procedure was performed during the summer of 1998 and SAMEDI has and continues to experience pain and suffering.

36.  SAMEDI has retained the undersigned counsel to prosecute this action on her behalf and has agreed to pay counsel reasonable attorneys' fees and costs.

### COUNT I
### TITLE VII – SEXUAL HARASSMENT
### HOSTILE WORK ENVIRONMENT
### (Against the COUNTY)

37.  SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 above, and further states:

38.  As a woman and as a Haitian, SAMEDI is a member of a protected class.

39.  GODWIN and JONES have subjected SAMEDI to unwanted and unwelcome sexual advances and sexual assaults.

40.  GODWIN's and JONES' sexual harassment and sexual assaults of SAMEDI was based upon SAMEDI's gender and her national origin.

41.  As a result of GODWIN's and JONES' sexual harassment and sexual assaults upon SAMEDI, and degrading comments of about her national origin, such action adversely affected the terms, conditions and privileges of SAMEDI's employment, and was so perverse as to alter the work environment and to create an abusive and hostile work environment.

42.  GODWIN's and JONES' sexual harassment and sexual assaults of SAMEDI were done knowingly and intentionally, and in willful, wanton and reckless disregard of SAMEDI's federally protected rights.

43.  WHITE and the other high ranking COUNTY officials had actual notice or should have known of GODWIN's sexual harassment and sexual assaults of SAMEDI but failed to appropriately act.

44.  As a direct and proximate result of GODWIN's and JONES' sexual harassment and sexual assaults of SAMEDI and WHITE's and the COUNTY's inaction, SAMEDI has suffered, and continuous to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation and physical injuries and distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A.  Declaring that the COUNTY discriminated against SAMEDI knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights, in violation of Title VII, as amended;

B.  Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C.  Ordering that the COUNTY remove GODWIN, JONES and WHITE from their employment with the COUNTY;

D.  Enjoining GODWIN and JONES from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN, JONES, WHITE and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct;

E.  Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, prejudgment interest, reasonable attorneys' fees and costs, and any

necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

## COUNT II
## TITLE VII – SEXUAL HARASSMENT AND SEXUAL ASSAULT
## QUID PRO QUO
## (Against the COUNTY)

45. SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 above, and further states:

46. As a woman and as a Haitian, SAMEDI is a member of a protected class.

47. GODWIN and JONES have subjected SAMEDI to unwanted and unwelcome sexual advances and sexual activities including oral sex and intercourse.

48. GODWIN's and JONES' sexual harassment, sexual assault and negative comments regarding SAMEDI's national origin were based upon SAMEDI's gender and national origin.

49. As a result of GODWIN's and JONES'sexual harassment and sexual assaults upon SAMEDI, and degrading comments of about her national origin, such action adversely affected the terms, conditions and privileges of SAMEDI's employment, and was so perverse as to alter the work environment and to create an abusive and hostile work environment.

50. GODWIN's and JONES' sexual harassment and sexual assaults of SAMEDI were done knowingly and intentionally, and in willful, wanton and reckless disregard of SAMEDI's federally protected rights.

51. WHITE are and the other high ranking COUNTY officials had actual notice or should have known of GODWIN's sexual harassment and sexual assaults of SAMEDI but failed to appropriately act.

52. GODWIN and JONES were, at all times relevant herein, COUNTY supervisors to whom the COUNTY has delegated the authority to supervisor employees in the COUNTY's DEPARTMENT including SAMEDI.  WHITE is the Chief of Trash with final divisional decision-making authority.  Therefore, the COUNTY is strictly liable for GODWIN's and JONES sexually harassing and sexually assaulting SAMEDI, and GODWIN's, JONES', and WHITE's discriminating conduct toward SAMEDI.

53. As a direct and proximate result of GODWIN's and JONES' sexual harassment and sexual assaults of SAMEDI, and WHITE's inaction, SAMEDI has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical injuries and distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A. Declaring that the COUNTY discriminated against SAMEDI knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights, in violation of Title VII, as amended;

B. Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C. Ordering that the COUNTY remove GODWIN, JONES and WHITE from their employment with the COUNTY;

D. Enjoining GODWIN and JONES from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN, JONES, WHITE and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E. Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, prejudgment interest, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

## COUNT III
## TITLE VII – SEXUAL HARASSMENT AND SEXUAL ASSAULT
## RETALIATION
### (Against the COUNTY)

54. SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 above, and further states:

55. As a woman and as a Haitian, SAMEDI is a member of a protected class.

56.  GODWIN and JONES have subjected SAMEDI to unwanted, unwelcome and nonconsensual sexual activities.

57.  GODWIN's and JONES' sexual harassment and sexual assault of SAMEDI was based upon SAMEDI's gender and national origin.

58.  SAMEDI was forced to engage in sexual activities with GODWIN and JONES under threats of termination and not having rights.

59.  SAMEDI and others complained about GODWIN's and JONES' sexual harassment and sexual assault of her to WHITE and other high ranking COUNTY supervisors and administrators, and SAMEDI filed a charge of discrimination for sexual harassment and sexual assault with the EEOC and with the COUNTY's Affirmative Action.

60.  After SAMEDI complained about GODWIN's and JONES' sexual harassment and sexual assault of her to WHITE and other high ranking COUNTY supervisors and administrators, GODWIN, JONES, WHITE and other COUNTY employees retaliated against SAMEDI by refusing to promote her to a permanent position, routinely subjecting her to humiliating and degrading statements about the sexual activities and her national origin, demanding that she go back home after reporting to work, failing to pay overtime for her overtime work, and continuously told her that she had no rights and must have sex in order to keep her job and to become permanent.

61.  GODWIN's and JONES' adverse conduct towards SAMEDI, and WHITE's inaction was as a direct result of SAMEDI's complaining to WHITE and other high ranking COUNTY supervisors and administrators.

62.  GODWIN, JONES and WHITE were aware in August 1997 that SAMEDI had filed an internal charge of sexual harassment and sexual assault against GODWIN and JONES.

63.  GODWIN, JONES and WHITE were aware in September 1997 that SAMEDI had filed a report with the COUNTY's police department and with the EEOC alleging that GODWIN and JONES had sexually harassed and sexually assault and retaliated against SAMEDI.

64.  GODWIN, JONES and WHITE retaliated against SAMEDI for reporting and filing the various charges by refusing to promote her to permanent position with the COUNTY and by failing to allow her to work and failing to pay her overtime.

65. Although SAMEDI has applied for a permanent position with the COUNTY, she has been refused such status for no apparent reason except those cited herein.

66. It was not until after GODWIN, JONES and WHITE learned about SAMEDI's internal and EEOC charges of discrimination that GODWIN, JONES WHITE and the COUNTY through others refused to promote or hire SAMEDI to a permanent position with the COUNTY and continuously subjected her to adverse working conditions and treatment.

67. Even though she applied more than once, SAMEDI was not promoted despite the fact that she had more than five years experience and others were promoted with less seniority.

69. GODWIN's, JONES' and WHITE's retaliation against SAMEDI for complaining about the unlawful conduct of GODWIN, by filing a COUNTY Affirmative Action Complaint, a police report, and an EEOC charge of discrimination against the COUNTY and others was done knowingly and intentionally, and in willful, wanton, and reckless disregard of SAMEDI's federally protected rights.

70. As a direct and proximate result of GODWIN's, JONES', and WHITE's retaliation against SAMEDI, SAMEDI has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical injuries and distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A. Declaring that the COUNTY discriminated against SAMEDI knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights, in violation of Title VII, as amended;

B. Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C. Ordering that the COUNTY remove GODWIN, JONES and WHITE from their employment with the COUNTY;

D. Enjoining GODWIN and JONES from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN,

JONES, WHITE and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E.  Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, prejudgment interest, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

**COUNT IV – SECTION 1983**
**(Against the COUNTY)**

71.  SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 above, and further states:

72.  As alleged in paragraphs 24, 26, 28, 31, and 32 above, GODWIN's, JONES, and other COUNTY employees' sexually harassing conduct is so widespread and has been so longstanding as to constitute a policy, practice or custom which is endorsed, condoned, accepted and effectively sanctioned by the COUNTY.

73.  Pursuant to the COUNTY's organizational structure, COUNTY employees working in the Division of Trash are to report any unlawful conduct including sexual harassment to WHITE because he is the Chief of Trash and had final divisional decision-making authority to decide whether to investigate and correct the problem

74.  On several occasions, SAMEDI attempted to express to WHITE that GODWIN and JONES were sexually harassing her and requiring sexual favors in exchange for a permanent position.

75.  Despite his knowledge of GODWIN's and JONES' improper and unlawful conduct, WHITE refused and failed to investigate in accordance with his authority and, in essence, did nothing, which is equivalent to a widespread practice and acceptance of the type of behavior shown by GODWIN and JONES within the COUNTY which constitutes a custom or usage with the force of law.  The COUNTY, if initiated, never gave SAMEDI notice or follow-up on their its conclusion of any investigation of her claims.

76.  WHITE and the COUNTY including the police department failed to exercise their discretion and investigate SAMEDI's claims, ultimately failed to discipline GODWIN and

JONES, and otherwise failed to stop GODWIN's and JONES' inappropriate and unlawful behavior.

77. As a result, the COUNTY, acting under color of state law, deprived SAMEDI of her federally protected rights to equal protection of the laws, as guaranteed by the Fourteenth Amendment of the United States Constitution specifically her right to be free of sexual harassment and sexual assault in her workplace.

78. The COUNTY acted knowingly, intentionally and in reckless disregard of SAMEDI's federally protected rights to equal protection.

79. As a direct and proximate result of the COUNTY's failure to act to stop and prevent GODWIN and JONES' sexual harassment and sexual assault of SAMEDI, SAMEDI has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical injuries and distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A. Declaring that the COUNTY discriminated against SAMEDI knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights, in violation 42 U.S.C. Sec. 1983 and Title VII, as amended;

B. Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C. Ordering that the COUNTY remove GODWIN, JONES and WHITE from their employment with the COUNTY;

D. Enjoining GODWIN and JONES from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN, JONES, WHITE and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E. Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, reasonable attorneys' fees and costs, and any necessary equitable relief including prejudgment interest, as a result of GODWIN's and JONES' sexual

harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

**COUNT V – SECTION 1983**
**RETALIATION**
**(Against the COUNTY)**

80.  SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 and paragraphs 55 through 70 above, and further states:

81.  The COUNTY, acting under color of state law, deprived SAMEDI of her federally protected rights guaranteed by the Fourteenth Amendment to the United States Constitution, specifically her right to be free of retaliation for complaining about sexual harassment and sexual assault in the workplace.

82.  The COUNTY acted knowingly, intentionally and in reckless disregard of SAMEDI's federally protected rights to equal protection of the laws.

83.  As a direct and proximate result of the COUNTY's failure to act to stop and prevent GODWIN and JONES' sexual harassment and sexual assault of SAMEDI, SAMEDI has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical injuries and distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A.  Declaring that the COUNTY discriminated against SAMEDI knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights, in violation of 42 U.S.C s.1983 and Title VII, as amended;

B.  Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C.  Ordering that the COUNTY remove GODWIN, JONES and WHITE from their employment with the COUNTY;

D.  Enjoining GODWIN and JONES from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN, JONES, WHITE and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E.  Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

**COUNT VI – SECTION 1983**
**(Against WHITE)**

84.  SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 and paragraphs 55 through 79, and further states:

85.  WHITE failed to exercise his superior position over GODWIN and JONES, and allowed SAMEDI's direct supervisors, GODWIN and JONES, to perpetrate sexual harassment and sexual assault of her.

86.  As such, WHITE acted under color of state law in depriving SAMEDI of her federally protected rights guaranteed by the First and Fourteenth Amendment to the United States Constitution, by discriminating against her based upon her national original by denying her a permanent position with the COUNTY, and violating her right to be free of sexual harassment and sexual assault and retaliation in the workplace.

87.  WHITE acted knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights.

88.  As a direct and proximate result of the COUNTY's failure to act to stop and prevent GODWIN and JONES' sexual harassment and sexual assault of SAMEDI, SAMEDI has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical injuries and distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A.  Declaring that the COUNTY discriminated against SAMEDI knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights, in violation of 42 U.S.C. Section 1983;

B.  Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C.  Ordering that the COUNTY remove GODWIN, JONES and WHITE from their employment with the COUNTY;

D.  Enjoining GODWIN and JONES from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN, JONES, WHITE and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E.  Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

## COUNT VII – SECTION 1983
## (AGAINST GODWIN)

89.  SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 and paragraphs 55 through 79, and further states:

90.  GODWIN used his supervisory position over SAMEDI as Waste Supervisor II, and her direct supervisor, to perpetrate his unlawful and inappropriate conduct upon the person of SAMEDI which equates sexual harassment and sexual assault of her.

91.  As such, GODWIN acted under color of state law in depriving SAMEDI of her federally protected rights guaranteed by the First and Fourteenth Amendment to the United States Constitution, by denying her a permanent position with the COUNTY and violating her right to be free of sexual harassment and sexual assault and retaliation in the workplace.

92.  GODWIN acted knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights.

93.  As a direct and proximate result of the GODWIN's failure to act to stop and prevent GODWIN and JONES' sexual harassment and sexual assault of SAMEDI, SAMEDI has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical injuries and distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against GODWIN as follows:

A.  Declaring that GODWIN and the COUNTY discriminated against SAMEDI knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights, in violation of 42 U.S.C. Section 1983;

B.  Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C.  Ordering that the COUNTY remove GODWIN from their employment with the COUNTY;

D.  Enjoining GODWIN from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E.  Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

**COUNT VIII – SECTION 1983**
**(AGAINST JONES)**

94.  SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 and paragraphs 55 through 79, and further states:

95.  JONES used his supervisory position over SAMEDI as Crane Operator, and her direct supervisor, to perpetrate his unlawful and inappropriate conduct upon the person of SAMEDI which equates sexual harassment and sexual assault of her.

96.  As such, JONES acted under color of state law in depriving SAMEDI of her federally protected rights guaranteed by the First and Fourteenth Amendment to the United States Constitution, by denying her a permanent position with the COUNTY and violating her right to be free of sexual harassment and sexual assault and retaliation in the workplace.

97.  JONES acted knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights to equal protection.

100. WHITE used his supervisory position over SAMEDI as Chief of Trash, and as SAMEDI's upper level supervisor, to perpetrate his retaliation against her for complaining about GODWIN's and JONES' sexual harassment and sexual assault of her by denying her a permanent position with the COUNTY.

101. As such, WHITE acted under color of law in depriving SAMEDI of her federally protected rights for complaining about sexual harassment and sexual assault and sex discrimination in her workplace.

102. WHITE acted knowingly, intentionally and in reckless disregard of SAMEDI's federally protected rights to equal protection.

103. As a direct and proximate result of the COUNTY's failure to act to stop and prevent GODWIN and JONES' sexual harassment and sexual assault of SAMEDI, SAMEDI has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical injuries and distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A. Declaring that the WHITE and the COUNTY discriminated against SAMEDI knowingly, intentionally, and in reckless disregard of SAMEDI's federally protected rights, in violation of 42 U.S.C. s.1983;

B. Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C. Ordering that the COUNTY remove GODWIN from their employment with the COUNTY;

D. Enjoining GODWIN from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E. Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, punitive damages, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and

sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

## COUNT X
### SECTION 760.01 et seq., Florida Statutes
### (Against the COUNTY)

104. SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 above, and further states:

105. As a woman and a Haitian, SAMEDI is a member of a protected class.

106. GODWIN and JONES have subjected SAMEDI to unwanted and unwelcome sexual activities.

107. GODWIN's and JONES' sexual harassment and sexual assault of SAMEDI, their retaliation against her for complaining about their conduct to higher ranking COUNTY supervisors including WHITE, for filing a police report, an Affirmative Action complaint and an EEOC charge of discrimination, and the COUNTY's failure to taken action to stop GODWIN's and JONES' improper and unlawful conduct, adversely affected the terms, conditions and privileges of SAMEDI's employment.

108. The COUNTY's and WHITE's retaliation and refusal to act in investigating SAMEDI's complaint of sexual harassment and sexual assault, and for her complaining about their conduct to higher ranking COUNTY officials and administrators, for filing a COUNTY Affirmative Action complaint, a police report, and an EEOC charge of discrimination, and WITHES's and the COUNTY's failure to take action to stop WHITE's improper and unlawful conduct, adversely affect the terms, conditions and privileges of SAMEDI's employment.

109. GODWIN's and JONES' sexual harassment and sexual assault, and their along with WHITE's retaliation against SAMEDI, and the COUNTY's failure to take any action to stop GODWIN's, JONES' and WHITE's improper and unlawful conduct, was done knowingly and intentionally, and in willful, wanton, and reckless disregard of SAMEDI's rights under the Florida Civil Rights Act of 1992, and in particular s.760.10(1)(a), Fla. Stats.

110. The COUNTY had actual notice, or should have known, of GODWIN's and JONES' sexual harassment and sexual assaults and GODWIN's, JONES, and WHITE's retaliation against SAMEDI, and of its own failure to take any action to stop GODWIN, JONES and WHITE from their improper and unlawful conduct.

111.  As a direct and proximate result of the COUNTY's failure to act to stop and prevent GODWIN and JONES' sexual harassment and sexual assault of SAMEDI, SAMEDI has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical injuries and distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A.  Declaring that the WHITE and the COUNTY discriminated against SAMEDI knowingly, intentionally, and in reckless disregard of SAMEDI's state and federally protected rights, in violation of Chapter 760, Florida Statutes;

B.  Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C.  Ordering that the COUNTY remove GODWIN from their employment with the COUNTY;

D.  Enjoining GODWIN from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E.  Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, prejudgment interest, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

## COUNT XI
## NEGLIGENT SUPERVISION
### (Against COUNTY)

112.  SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 above, and further states:

113.  The COUNTY knew, or should have known:

a.  of GODWIN and JONES sexual harassment and sexual assault of SAMEDI;

b.  of JONES personnel record of incompetence and suspicions;

c. that GODWIN and JONES have a propensity to make unwanted and unwelcome sexual advances toward and request sexual favors of women employees especially temporary of the COUNTY, and to use their supervisory authority within the DEPARTMENT to subject women employees to such inappropriate and unlawful conduct;

d. that WHITE has a propensity to ignore and turn his head by failing to stop GODWIN's and JONES' inappropriate and unlawful conduct;

e. that the personal traits of GODWIN and JONES rendered them unsuitable to serve as supervisors within the DEPARTMENT because the positions require that both GODWIN and JONES supervise and work closely with women subordinates; and

f. that by virtue of their personal traits, GODWIN and JONES could sexually harass and sexually assault SAMEDI, and other women employees of the COUNTY, and that GODWIN, JONES and WHITE could retaliate against SAMEDI and other women employees of the COUNTY.

114. The COUNTY owes a duty of care to SAMEDI, and to its other women employees, to supervisor GODWIN, JONES and WHITE in a manner that protects them from sexual advances, sexual assault, sexual harassment, requests for sexual favors and other inappropriate and unlawful sexual conduct by GODWIN, JONES and WHITE.

115. The COUNTY breached its duty of care owed to SAMEDI by failing to supervisor GODWIN, JONES and WHITE in a manner that took corrective action to prevent GODWIN's, JONES' and WHITE's sexually harassment, sexually assault and retaliation against SAMEDI in the first instance, and to stop GODWIN's, JONES' and WHITE's inappropriate and unlawful sexual behavior after it had begun.

116. As a direct and proximate result of the COUNTY's failure to supervise GODWIN and JONES in a manner that took corrective action to prevent and, if not prevent, to stop GODWIN's, JONES' and WHITE's sexual harassment and sexual assault of, and retaliation against SAMEDI, SAMEDI has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A. Declaring that the COUNTY has negligently supervised GODWIN, JONES and WHITE;

B. Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C. Ordering that the COUNTY remove GODWIN from their employment with the COUNTY;

D. Enjoining GODWIN from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E. Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, prejudgment interest, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

### COUNT XII
### NEGLIGENT RETENTION
### (Against the COUNTY)

117. SAMEDI realleges and incorporates herein by reference the allegations of contained in paragraphs 1 through 36 and 113 through 116 above, and further states:

118. The COUNTY owes a duty of care to SAMEDI, and to its other women employees, to protect them from sexual advances, sexual harassment, sexual assault, requests for sexual favors and other inappropriate and unlawful sexual conduct by GODWIN and JONES.

119. The COUNTY breached its duty of care owed to SAMEDI by retaining GODWIN and JONES as supervisors in the DEPARTMENT, after it received actual or implied notice that GODWIN and JONES were sexually harassing and sexually assaulting SAMEDI, and engaging in inappropriate behavior with other women at the COUNTY.

120. As a direct and proximate result of the COUNTY's retention of GODWIN and JONES as supervisors over SAMEDI, SAMEDI has suffered, and continues to suffer, loss of

income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A. Declaring that the COUNTY has negligently retained GODWIN, JONES and WHITE;

B. Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C. Ordering that the COUNTY remove GODWIN from their employment with the COUNTY;

D. Enjoining GODWIN from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E. Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, prejudgment interest, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

### COUNT XIII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against the COUNTY)

121. SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 and 113 through 116 above, and further states:

122. GODWIN's and JONES' sexual harassment and sexual assault of and GODWIN's, JONES' and WHITE's retaliation against SAMEDI, their negative comments about SAMEDI's national origin, mocking and taunting her as alleged in paragraph 15 above, and their intentionally subjecting her to public humiliation and embarrassment, such as the bragging to other employees by GODWIN and JONES regarding the sexual encounters with

SAMEDI, and failing to promote SAMEDI to permanent after she had worked as a temporary since 1992, has caused, and continues to cause SAMEDI severe emotional distress.

123. The COUNTY's failure to take any remedial action after it received actual notice of GODWIN's and JONES' sexual harassment, sexual assault and retaliation by GODWIN, JONES and WHITE against SAMEDI, has further embarrassed and humiliated SAMEDI, and has cause, and continues to cause, SAMEDI severe emotional distress.

124. GODWIN, JONES, WHITE and the COUNBTY have repeatedly, willfully and intentionally inflicted emotional distress on SAMEDI, or acted in reckless disregard of whether their conduct would cause SAMEDI emotional distress.

125. As a direct and proximate result of GODWIN's, JONES', WHITE's and the COUNTY's conduct toward SAMEDI, SAMEDI has suffered and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical distress.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor, and against the COUNTY as follows:

A.  Declaring that the COUNTY intentionally inflicted emotional distress on SAMEDI;

B.  Ordering that SAMEDI be promoted to a position consistent with the time she was intentionally delayed to a permanent position due to the unlawful conduct administered by GODWIN, JONES, WHITE and the COUNTY;

C.  Ordering that the COUNTY remove GODWIN from their employment with the COUNTY;

D.  Enjoining GODWIN from make sexual advances towards, requesting sexual favors of, committing sexual assault upon and otherwise sexually harassing SAMEDI and negatively referring to SAMEDI's national origin, and enjoining GODWIN and the COUNTY from retaliating against SAMEDI for seeking to remedy their inappropriate and unlawful conduct; and

E.  Awarding SAMEDI all back pay, front pay, lost benefits, permanent position, compensatory damages, prejudgment interest, reasonable attorneys' fees and costs, and any necessary equitable relief as a result of GODWIN's and JONES' sexual harassment

and sexual assault of her and degrading her based upon her national origin, and WHITE's and the COUNTY's inaction.

## COUNT XIV
## ASSAULT AND BATTERY

126.  SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 above, and further alleges:

127.  GODWIN and JONES intentionally committed the above described acts, and willfully and maliciously assaulted and battered SAMEDI from 1993 to August 1997.

128.  GODWIN's and JONES' acts created a fear of imminent danger in SAMEDI. Both GODWIN and JONES had the ability to carry out the acts.

129.  As a result of GODWIN's and JONES' acts, SAMEDI suffered emotional pain and mental anguish, physical injury, loss of capacity for the enjoyment of life, loss of earnings and other damages.

WHEREFORE, SAMEDI requests that this Court enter judgment in her favor and against GODWIN and JONES for:

      a.  Compensatory damages, costs, interest; and

      b.  All other relief the Court deems appropriate.

## COUNT XV
## VIOLENCE AGAINST WOMEN ACT, 42 U.S.C. Sec. 13981

130.  SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 above, and further alleges:

131.  The actions of GODWIN and JONES constitute a violation of 42 U.S.C. Sec. 13981 in that they deprived SAMEDI of the right to be free from a crime of violence motivated by gender.  Pursuant to 42 U.S.C. Sec.13981, this Court has jurisdiction over SAMEDI's claims made under the Violence Against Women Act.  Specifically:

      a.  GODWIN's and JONES' unprovoked, malicious physical assault and battery on SAMEDI from 1993 to August 1997, constitutes a felony under Florida law and is a "crime of violence" within the meaning of Title 18 U.S.C. Sec.16.

      b.  GODWIN's and JONES' actions were based upon SAMEDI's gender and motivated, in part, by defendants animus toward women.

CASE NO. 98-3055-CIV-HOEVELER

## COUNT XVI
## INVASION OF PRIVACY

132. SAMEDI realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 36 above, and further alleges:

133. GODWIN's and JONES' conduct constituted an invasion of SAMEDI's privacy, i.e., invasion of her physical solitude and her right to be left alone.

134. As a result of the actions of GODWIN and JONES, SAMEDI has suffered and continues to suffer damages, including but not limited to, physical pain and suffering and severe emotional distress.

WHEREFORE, SAMEDI demands judgment against GODWIN and JONES for:

    a. Compensatory damages, costs, interest; and

    b. All other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

SAMEDI hereby demands trial by jury as to all issues so triable.

DATED this 3rd day of November, 1999.

Respectfully submitted,

BY: _____
Patricia C. Ellis, Esq.
Attorney for Plaintiff
Fla. Bar No. 779016
P.O. Box 540516
Opa-locka, FL 33054-0516
Tel.: (305) 688-4572
Fax: (305) 685-6747

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. mail/hand-delivery on this 3rd day of November, 1999, to: Thomas A. Tucker Ronzetti, Assistant County Attorney, 111 N.W. 1st Street, Suite 2810, Miami, Florida 33128-1993.

BY: _____
Patricia C. Ellis, Esq.
Fla. Bar No. 779016

33

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA<br>☒ EEOC | 150974329 |

Metro Dade Equal Opportunity Board _____ and EEOC

*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Francoise Samedi | (305) 893-5902 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 13055 N.E. 6th Ave, #214, Miami, FL 33161 | | 10/15/54 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Metro Dade County Solid Waste | Cat D (501 +) | (305) 594-1513 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 8675 Nw 53 St., Miami, FL 33166 | | 025 |

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☒ NATIONAL ORIGIN<br>☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (Specify) | EARLIEST 01/15/93    LATEST 08/14/97<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

1. I am a female of Haitian national origin. I have been sexually harassed and assaulted by supervisors, Lim Jones and Donald Godwin. I was promised a promotion in exchange for sex. Both forced themselves upon me sexually without my consent.

2. I attempted to talk to David White, Chief of Trash, about my problem, but he said to go to another supervisor. I talked with Pamela Payne, human resources, about the problem.

3. I believe that I have been discriminated against on the basis of my gender and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended.

| ☐ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>✓ 9/8/97     ✓ FRANCOISE SAMEDI<br>Date            Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br><br>✓ FRANCOISE SAMEDI<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day, month, and year) |

EEOC FORM 5 (Rev. 06/92)

EXHIBIT "A"

15097 4329

# AFFIDAVIT

Title VII/ADEA/EPA- mail

I, *FRANCOISE SAMEDI* being first duly sworn upon my oath affirm and hereby say:
(Name)

I have been given assurances by an Agent of the U.S. Equal Employment Opportunity Commission that this Affidavit will be considered confidential by the United States Government and will not be disclosed as long as the case remains open unless it becomes necessary for the Government to produce the affidavit in a formal proceeding. Upon the closing of this case, the Affidavit may be subject to disclosure in accordance with Agency policy.

I am 42 years of age, my gender is female and my racial identity is black.

I reside at 13055 NE 6 Ave #214,

City of Miami, County of Dade.

State of Fla., ZipCode 33161

My telephone number is (including area code) (305) 893-5902

My statement concerns Metro Dade County Solid Waste Dept. which is located
(Name of Union/Company/Agency)

at 111 NW 1 St; 8675 NW 53 St,
(Number/Street)

in Miami                FL        33166.
(City)                (State)        (Zip)

My job classification is (if applicable) Temp. Waste Attendant; Date of Hire 9/92.
(job title)

My immediate supervisor (if applicable) Don Godwin        Supervisor +
(Name)                (job title)

1. State the basis for your belief that you were discriminated against.
Sexual harassment and sexual assault by two males, I am female.

2. How many employees work for your employer or former employer?

3. What is the nature of the company's business? County government Solid Waste Department

4. Describe your job title, department and duties at the time of the alleged discriminatory actions.
Temp. Waste attendant, Solid Waste Dept. Duties include picking up trash, tires, and cleaning up office.

FS        Page 1 of 3
(initials)

150 97 4329

Name: FRANCOISE SAMEDI

5. Describe your work history, experience, and education.

Factory — Shoes & belts.

6. Describe your work performance and last performance evaluation.

Good.

7. Have you received any disciplinary actions? If so, state the type of action and date.

None.

8. What are the incidents that led to the alleged discriminatory treatment?

Both Lim Jones & Don Godwin promised me a permanent position if I had sexual relationship with them. I never consented but both continuously forced themselves on me. I never was made permanent.

9. Who committed violations similar to those you were accused of making and how did the company deal with them? Identify each person by name, job held, sex, race, national origin, age, etc.

10. What policy or practice do you believe was applied in a discriminatory manner?

11. What reason did the company give for subjecting you to the alleged discriminatory treatment?

12. Identify all persons who were treated differently from the manner in which you were treated.

Eric Mayo          Sclera Tyler        Godfred Anderson
Cameron Oaks       Kenneth Spencer     Carlton Anderson
Angela Lewis       F.S.                Page 2 of 3
Carla Unknown      Desra Unknown       (initials)

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | 150974329 |

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

Metro Dade Equal Opportunity Board _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Francoise Samedi | (305) 893-5902 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| 13055 N.E. 6th Ave, #214, Miami, FL 33161 | 10/15/54 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Metro Dade County Solid Waste | Cat D (501 +) | (305) 594-1513 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 8675 Nw 53 St., Miami, FL 33166 | 025 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN | *EARLIEST*    *LATEST* |
| ☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify)* | 01/15/93    08/14/97 |
| | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

1.  I am a female of Haitian national origin.  I have been sexually harassed and assaulted by supervisors, Lim Jones and Donald Godwin.  I was promised a promotion in exchange for sex.  Both forced themselves upon me sexually without my consent.

2.  I attempted to talk to David White, Chief of Trash, about my problem, but he said to go to another supervisor.  I talked with Pamela Payne, human resources, about the problem.

3.  I believe that I have been discriminated against on the basis of my gender and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended.

| ☐ I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| ✓ 9/8/97     ✓ FRANCoiSe SAMedi | ✓ FRANCoiSe SAMedi |
| Date          Charging Party *(Signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (Rev. 06/92)

EXHIBIT "A"

15097 4329

# AFFIDAVIT

Title VII/ADEA/EPA- mail

I, _FRANCOISE SAMEDI_ being first duly sworn upon my oath affirm and hereby say:
*(Name)*

I have been given assurances by an Agent of the U.S. Equal Employment Opportunity Commission that this Affidavit will be considered confidential by the United States Government and will not be disclosed as long as the case remains open unless it becomes necessary for the Government to produce the affidavit in a formal proceeding. Upon the closing of this case, the Affidavit may be subject to disclosure in accordance with Agency policy.

I am _42_ years of age, my gender is _female_ and my racial identity is _black_.

I reside at _13055 NE 6 Ave #214_,

City of _Miami_, County of _Dade_.

State of _Fla._, ZipCode _33161_.

My telephone number is (including area code) _(305) 893-5902_.

My statement concerns _Metro Dade County Solid Waste Dept_ which is located
*(Name of Union/Company/Agency)*

at _111 NW 1 St ; 8675 NW 53 St_,
*(Number/Street)*

in _Miami_ _FL_ _33166_.
*(City)* *(State)* *(Zip)*

My job classification is (if applicable) _Temp. Waste Attendant_; Date of Hire _9/92_.
*(job title)*

My immediate supervisor (if applicable) _Don Godwin_ _Supervisor +_
*(Name)* *(job title)*

1. State the basis for your belief that you were discriminated against.
_Sexual harassment and sexual assault by two males, I am female._

2. How many employees work for your employer or former employer?

3. What is the nature of the company's business? _County Government Solid Waste Department._

4. Describe your job title, department and duties at the time of the alleged discriminatory actions.
_Temp. Waste attendant, Solid Waste Dept Duties include picking up trash, tires, and cleaning up office._

_FS_ Page _1_ of _3_
*(initials)*

150 97 4329

Name: FRANCOISE   SAMEDI

5. Describe your work history, experience, and education.

Factory — Shoes + belts.

6. Describe your work performance and last performance evaluation.

Good.

7. Have you received any disciplinary actions? If so, state the type of action and date.

None.

8. What are the incidents that led to the alleged discriminatory treatment?

Both Lim Jones + Don Godwin promised me a permanent position if I had sexual relationship with them. I never consented but both Continuously forced themselves On me. I never was made permanent.

9. Who committed violations similar to those you were accused of making and how did the company deal with them? Identify each person by name, job held, sex, race, national origin, age, etc.

10. What policy or practice do you believe was applied in a discriminatory manner?

11. What reason did the company give for subjecting you to the alleged discriminatory treatment?

12. Identify all persons who were treated differently from the manner in which you were treated.

Eric Mayo            Selena Tyler        Godfred Anderson
Cameron Oaks         Kenneth Spencer     Carlton Anderson
Angela Lewis         F S                 Page 2 of 3
Carla Unknown        Debra Unknown       (initials)

*150 97 4329*

Name: Francoise Samedi

13. Provide the name, address and telephone number for each witness. Explain what each witness can attest to.

12-4/121 Denise Alabreu — Don and Lim either told her directly about this.

31.31/35 Jenine Gamble — " told her about his sexual relations while.

6/12. Coleman Tyler — " " him " " ,

All of the above works for Solid Waste Dept.

I have read this Affidavit consisting of **3** handwritten [✓] typed [ ] pages and swear that these facts are true and correct to the best of my knowledge and belief.

X FRANCOISE SAMEDI

Subscribed and sworn to before me
this **8TH** day of **September 1997**.

Kasha Abbott

### AFFIDAVIT OF FRANCOISE SAMEDI

STATE OF FLORIDA)
COUNTY OF DADE )

BEFORE ME, the undersigned authority, personally appeared FRANCOISE SAMEDI, who, after being duly sworn, deposes and says:

1. My name is Francoise Samedi aka Francine aka Fran. I am a black single female and my date of birth is October 15, 1954. I am an immigrant from Haiti who came to the United States on April 27, 1992. I am a single parent with three (3) children all living in Haiti. Their ages are 6 years, 14 years and 18 years old as of this day. I send financial support to my children.

2. From September of 1992 until present, I have worked as a temporary waste attendant for Metro-Dade County Solid Waste Management (hereinafter "Solid Waste or county"). I initially worked for Solid Waste through a temporary agency named "Prefco" which was later replaced by "AVIP," and "DELAD." Presently, I am working through a temporary agency named "Tri-State." I have interviewed for a full-time position with Solid Waste only once, in 1997, but was not hired.

3. From the beginning of my employment with Solid Waste until approximately August 1997, I experienced sexual harassment, sex discrimination, and discrimination based on national origin. There were so many encounters that I do not remember all of the dates.

4. When I came to the United States, I did not speak English. My native language is Creole. To this day, my English is very limited. Others have to interpret the English language to me. I am presently attending night school to learn English.

5. In September of 1992, I worked under the direct supervision of Lim Jones, Crane Operator. Lim Jones wanted me to work only for him. On many occasions, approximately 2-3 times per week, from September 1992 to August 1997, Lim Jones would forcefully put his fingers in my pussy [vagina], push me into the county trash truck and county crane and have sex with me without my consent. I would fall down and hurt my back. He would hit me with his hands and fists all over my body. He would forcibly remove my clothing and put his penis into my vagina.

During the earlier years when I did not speak nor understand English, Lim Jones would not say anything to me except call my name, "Francine, Francine," while touching my private parts. However, later as I understood some English words, Lim Jones would say, "Francine, if you tell anybody about this, I will fire you. I drive the crane and I am

your boss." He told me that "in order to bet job with county, you to let him do this to you." He never used protection when he had sex with me. During this period, I did not tell anyone about what was happening to me because I did not speak English and I did not trust anyone and felt I had no one to tell. I was ashamed and embarrassed.

6. Repeatedly, while working on the crane with Lim Jones, he would pull down his pants and fight with me to have sexual intercourse. After learning a few English words, I would tell him, "no, no, no!" but he would threaten me by saying, "don't tell anyone or I will fire you." I felt I had nobody to tell what happened and I feared I would loose my job that I needed to support my family over in Haiti. I was told that Lim Jones would tell everybody at work under the breezeway at the 58th Street Solid Waste about the sexual things he did to me. I would be sitting there but did not fully understand what he was saying and laughing about. I would walk away alone ashamed and embarrassed. I have never went on a date with Lim Jones.

7. In 1995, while Carl Stringer was Supervisor I, there was a meeting between the temporary workers and Mr. Stringer. After the meeting, Lim Jones said to me "stupid Haitian you don't know how to speak English; fucking Haitian don't talk English, talk shit." Mr. Stringer told me to go work with Lim Jones. I told Mr. Stringer, "I no work with Lim Jones no more; Lim Jones said to me 'fucking Haitian talk shit no talk English.'" Later that day, Mr. Stringer reassigned me from the crane to the clean up crew. Sometime later they reassigned me to clean the office and Mr. Stringer was promoted from a Trash Supervisor I to a Garbage Supervisor II. He was no longer over me. Coleman Tyler became acting Trash Supervisor I and David White was Supervisor II over me.

8. Once in 1995, Lim Jones drove the county trash truck and took me to a motel without my knowledge and consent. The motel was located on 27th Avenue and Northwest 7th Street. I do not know the name of the motel. It was lunchtime. Lim Jones said, "I go to restaurant and get you lunch." I saw that it was not a restaurant. He told me, "come here Francine." I came to him and he gave me a fight and had forced me to have sex with him in the motel room.

9. Once in 1996, I wore sandals to work and Coleman Tyler, Trash Supervisor I, told me that I needed to go home and change into shoes. Coleman Tyler told Don Godwin, Trash Supervisor I who had been transferred from down south to the 58th Street station, to take me home in the county car. At that time, I lived on 131st Street and

Northeast 7th Avenue.  Before we went to my apartment, Don Godwin took me to a remote area and began to push and pull on me.  He said, "I am your boss and supervisor over you; fucking Haitian; if you tell somebody, I will fire you."  Don Godwin forced me to have sex with him in the county car on that day.  After he finished with me, he took me home and said, "Francine, you stay home and I will pay you for a full day."  I only received 4 hours pay for that day.  I told no one about this because I feared for my job and was ashamed and embarrassed.

10.  One day in 1997, Eusebio Carbo, supply/box house man, did not come to work.  I asked Don Godwin for cleaning supplies.  We were both in the box house where the supplies are stored.  Don Godwin fought with me and forced me to have oral sex and intercourse.  He pulled me by my hair and force my mouth onto his penis and told me, "suck it bitch, you mother-fucking Haitian or I will fire you."  He only had sex with me in the box house once.  I was reassigned by Don to work on the crane with Lim Jones.

11.  In May of 1997, Don Godwin wanted to take me home.  I told him, "no because I have a husband."  I have a live-in boyfriend named, Jonas Temoahee.  (I have not told my boyfriend what was happening to me because I was embarrassed.)  Don Godwin then asked Denise Alabre, Waste Attendant at the 79th Street dump, could he go to Denise house with me.  Sometimes Denise drives me home from work.  Denise told him "no, because my husband is at home."  On that day, Denise took me home and I walked home from her house.  Previously, Denise told me about her past and how she had had sex with Bobby Tomlin, former Chief of Trash, and others for two years before she was hired by the county.  She said that Mr. Tomlin was told that Denise did not speak English and should not be hired.  Mr. Tomlin allegedly responded that Cubans don't speak English and they get hired.  He asked Denise for her social security number, he put it into the computer and she was hired.  Denise explained to me, "Francine, you have sex and you get job with county."  Denise presently lives at 13300 N.E. 6th Avenue, Apt. #204, Miami, FL  33162; she presently has no telephone.

12.  On Wednesday, June 25, 1997, the clean up crew I worked with did overtime under the supervision of Ron Relaford, Waste Attendant II.  On that day, Don Godwin picked me up and took me to a remote place somewhere near 215th Street and between northwest 47th Avenue and 27th Avenue.  This place is near the expressway and there are

no houses or businesses nearby. Don Godwin parked the county car near a lot of debris that included a discarded living furniture. I got out of the truck and Don Godwin forcefully pushed me and held me down. He hit me and pulled his pants off. He pulled my hair and pulled my clothes off and forced me to have oral sex and sexual intercourse with him without my consent. He would always call me bad names. Don Godwin said, "I am the boss man over you; I am your supervisor; if you tell somebody about this, I'll fire you, you fucking Haitian." During the encounter, I told him, "no, no, Don, no, no." Lim Jones would say, "take it easy Francine; if you tell somebody, I'll fire you." The same thing happened in the above-described remote area on at least three (3) occasions, once from Ron's crew and twice from Lim Jones' crew. In addition, Don Godwin has picked me up from the crane many times and taken me to other areas including the home a man named "Buck" who is a friend of Don Godwin and Coleman Tyler. Buck lives on or near 56th Street and about northwest 24th Avenue near Joe Caleb Center. Don Godwin has forced me to have sex in the county truck and county car. Don Godwin would never use any protection.

13. On many occasions while I worked cleaning the office, Don Godwin would force me to have oral sex and intercourse without my consent. He would force me to have sex in the office bathroom and in the box house. This occurred as recent as August 14, 1997. While I was cleaning the office bathroom, he shut the door and said, "suck that for me, Francine, suck." He was pulling my hair and pointing at his genitals. I told him, "no Don, somebody come; please no." Don Godwin said, "nobody could see, suck Francine, suck." There are no windows in the bathroom. We in fact had a sexual encounter on this day without my consent and without protection. I distinctly remember this day because on August 15, 1997, Don Godwin asked, "Francine, where do you want to work" and I told him, "I had no problem, I work where ever they send me." On or about this day, Denise Alabre told me that Don Godwin had told her to tell me that "it is not my fault Francine wasn't hired; I sent her name downtown; please tell her not to be mad with me."

14. On August 15, 1997, I received a device which appeared to be a radio from Jennie Gamble, temp. waste attendant. She did not explain to me what it was. I though it was a radio. I put it in my purse. While I was on the crane, I opened my purse in the

4

presence of Lim Jones. He saw the device and said to me, "you have a tape-recorder." I told him, "no this is radio 'Nene' gave me." Lim Jones then told Clem Hamilton, Trash Truck Driver, "Francine has a lawyer's tape-recorder." He further said, "this is no radio, this means you got a lawyer." He asked me, "is something wrong, Francine?" I told him again, "this Nene's radio."

15. On Monday, August 25, 1997, Alonzo Wright, Supervisor II, told certain temps to go home because temps do not work on Mondays. However, they let temps work who had been there only 2 weeks to a month. I felt it was unfair to send new temps out and not send us. I said, "if every temp don't work, then every temp don't work." Then we went to the big boss, David White, Chief of Trash. Mr. White said, "call Alonzo Wright." We he came, we were standing there waiting but was asked to leave the room. We waited about 1 hour but no one told us anything. Bertha Gomez, temporary Waste Attendant, Jennie Gamble, temporary Waste Attendant, and I decided to go to the Kroger Building located at 8675 N.W. 53rd Street, to speak with Mr. Andy Wilfork, Director, about several problems encountered on the job. We wanted to tell him about sexual harassment by supervisors and the unfair treatment of temps. We were told that Mr. Wilfork was on vacation and Pamela Payne, Manager of Human Resources, spoke with us.

16. During the month of August, 1997, I became so tired of what was happening to me that I wanted to tell someone. I no longer cared how I looked when I came to work. I wanted to quit the job. I would tell Jennie Gamble that I was tired and wanted to quit but I gave her no reason. I have blurted out to Inetha Hawkins (Nite) and told her, "Don hurt me; Lim hurt me; Don fucked me; Don big." Nite told me to report it. She told me to call channel 7. She spoke to Jean about what she was concerned for me. I went to the doctor because I was hurt. I took medicine, Motrin 800 mg. Nite asked me, "why are you taking that medicine?" I told Nite, "me hurt."

17. On August 25, 1997, I decided upon the urging of Bertha that I would tell Pamela Payne. While alone with Ms. Payne, I began to talk to her about Lim Jones and Don Godwin. She then called David White, Chief of Trash, and had me to tell about the sexual encounters in front of him. I, again, told what had been happening to me by Lim Jones and Don Godwin. She then said she needed to get an interpreter for me and that

she would rescheduled me to come talk to her. I thought I was to go back the next day but was told by Mr. Edwards that I would not go until Thursday, August 28, 1997. Then on Thursday, I was told to go on Friday, August 29, 1997. I felt I needed a lawyer and somebody gave me a business card for Patricia C. Ellis, Esq., and I contacted her on Thursday night and asked her to represent me at the meeting with Ms. Payne because I was afraid I would be in trouble and be fired.

Prior to going to the appointment and before I contacted Ms. Ellis, Kenneth Edwards, Supervisor I, suggested that I take Jean Baptiste Gachlin, Crane Operator, to Kroger Building with me because I did not speak nor understand English very well. I did not follow Mr. Edwards' advice and wanted a lawyer instead. I told my boyfriend what was happening because I felt he would find out anyway.

18.   Inetha Hawkins, a county employee aka Nite, who lives at 2505 W. 5th Ave., Hialeah, FL, telephone number is (305) 888-3372, says she knows that Don Godwin and Lim Jones would have rough sex with me in the office bathroom and on the office desk because I have blurted it out to her. Karen Williams, aka Twin, said she seen Lim Jones do things wrong on the job including paying a street woman money to have sex with Mr. Wright's nephew, Cameron Oakes, on the county truck. About six (6) months ago before I went to the Kroger building, a male Haitian co-worker named Yvonne (last name unknown) who work at Palm Springs North mini dump told me, "not to be mad but that he had heard people saying that you [I] had sexual encounters with those guys. I do not wish you to do that any more." Also, someone named Alex told me that "he hear people talking about me that while I was working in the office and went to the garage and had sexual relations." He said that he "is a Haitian and when I hear someone saying bad things about you it makes me feel bad." These people don't talk because they do not want to talk because Lim Jones talk to them. Once during one of the sexual encounters with Lim, Jones told an employee named Carlos not to come in the garage. Lim Jones and I were in the truck and Lim backed up the crane into the garage and blocked it with the truck and had forced sex with me. Lim has told co-workers that I am his girlfriend in front of me. I have never had a relationship with Lim outside of work. Lim has had a mentally retarded co-worker named Morris

Woodmore to take off all of his clothes under the false impression that I was going to have sex with him. Lim Jones has had Morris to give me $20.00 but I refused to take it.

19. On August 29, 1997, I reported to the Koger Building with my attorney, Ms. Ellis. Ms. Payne and Juan De Ona, Dade County Fair Employment Practices Specialist, decided to cancel the meeting and reschedule so that a county attorney could be present.

20. Since I started to work there and to this day, whenever I went out on the crane and needed to go to the bathroom, none of the crane operators would take me to the bathroom. I say to Lim Jones, "I go to bathroom." He would park the crane and say, "pee-pee right there (pointing at the ground)." He would watch me pull down my panties and urinate [pee pee/piss]. When I work with Mosses Jackson, crane operator, he tell me, "pee pee (pointing to the truck)." I would crawl up inside of the dump truck and piss in there.

21. On September 8, 1997 at 10:00 a.m., I along with my attorney went to the Stephen P. Clark Center, 111 N.W. 1st Street, Suite 2720. I gave my statement to Ms. Payne, Mr. De Ona and William X. Candela, Assistant County Attorney for Dade County. The interview took approximately three (3) hours with an interpreter present.

22. On September 8, 1997, I filed an EEOC complaint for the above-mentioned reasons and because I believe that I have been sexually harassed and discriminated against based upon my sex and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended.

Further Affiant Sayeth Naught.

I have read this Affidavit consisting of ___ typed pages and swear that these facts are true and correct to the best of my knowledge and belief.

_Francoise Samed._
Francoise Samedi, Affiant

Subscribed and sworn to before me
this ___ day of January, 1998.

Notary Public, State of Florida

My Commission Expires:

PATRICIA C ELLIS
My Commission CC391677
Expires Aug. 12, 1998
Bonded by HAI
800-422-1555

7



**U.S. Departm⸱  ᵉ Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
Z 394 099 387

*Washington, DC 20530*
September 9, 1998

Ms. Francoise Samedi
c/o Patricia C. Ellis, Esquire
Attorney at Law
P.O. Box 540516
Opa-Locka, FL  33054-0516

Re:  EEOC Charge Against Metro Dade County, Solid Waste
     Management
     No. 150974329

Dear Ms. Samedi:

     Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the
date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a
civil action under Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. 2000e, et seq., against the above-named
respondent.
     If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.
     The investigative file pertaining to your case is located in
the EEOC Miami District Office, Miami, FL.
     This Notice should not be taken to mean that the Department
of Justice has made a judgment as to whether or not your case
is meritorious.

                              Sincerely,

                              Karen L. Ferguson
                              Civil Rights Analyst
                         Employment Litigation Section

cc:  Miami District Office
     Metro Dade County, Solid Waste Management

—          EXHIBIT "B"          —

150 97 4329

Name: Francoise Samedi

13. Provide the name, address and telephone number for each witness. Explain what each witness can attest to.

12-1171 Denise Alabreu — Don and Lim either told her directly about this.
51-0135 Jenine Gample — " told her about his sexual relations when.
Ul-ld Coleman Tyler — " " him " " '

All of the above work for Solid Waste Dept.

I have read this Affidavit consisting of **3** handwritten ☑ typed ☐ pages and swear that these facts are true and correct to the best of my knowledge and belief.

X FRANcoise samedi

Subscribed and sworn to before me this **8TH** day of **September 1997**.

Kasha Abbott

### AFFIDAVIT OF FRANCOISE SAMEDI

STATE OF FLORIDA)
COUNTY OF DADE )

BEFORE ME, the undersigned authority, personally appeared FRANCOISE SAMEDI, who, after being duly sworn, deposes and says:

1. My name is Francoise Samedi aka Francine aka Fran. I am a black single female and my date of birth is October 15, 1954. I am an immigrant from Haiti who came to the United States on April 27, 1992. I am a single parent with three (3) children all living in Haiti. Their ages are 6 years, 14 years and 18 years old as of this day. I send financial support to my children.

2. From September of 1992 until present, I have worked as a temporary waste attendant for Metro-Dade County Solid Waste Management (hereinafter "Solid Waste or county"). I initially worked for Solid Waste through a temporary agency named "Prefco" which was later replaced by "AVIP," and "DELAD." Presently, I am working through a temporary agency named "Tri-State." I have interviewed for a full-time position with Solid Waste only once, in 1997, but was not hired.

3. From the beginning of my employment with Solid Waste until approximately August 1997, I experienced sexual harassment, sex discrimination, and discrimination based on national origin. There were so many encounters that I do not remember all of the dates.

4. When I came to the United States, I did not speak English. My native language is Creole. To this day, my English is very limited. Others have to interpret the English language to me. I am presently attending night school to learn English.

5. In September of 1992, I worked under the direct supervision of Lim Jones, Crane Operator. Lim Jones wanted me to work only for him. On many occasions, approximately 2-3 times per week, from September 1992 to August 1997, Lim Jones would forcefully put his fingers in my pussy [vagina], push me into the county trash truck and county crane and have sex with me without my consent. I would fall down and hurt my back. He would hit me with his hands and fists all over my body. He would forcibly remove my clothing and put his penis into my vagina.

During the earlier years when I did not speak nor understand English, Lim Jones would not say anything to me except call my name, "Francine, Francine," while touching my private parts. However, later as I understood some English words, Lim Jones would say, "Francine, if you tell anybody about this, I will fire you. I drive the crane and I am

your boss." He told me that "in order to bet job with county, you to let him do this to you." He never used protection when he had sex with me. During this period, I did not tell anyone about what was happening to me because I did not speak English and I did not trust anyone and felt I had no one to tell. I was ashamed and embarrassed.

6. Repeatedly, while working on the crane with Lim Jones, he would pull down his pants and fight with me to have sexual intercourse. After learning a few English words, I would tell him, "no, no, no!" but he would threaten me by saying, "don't tell anyone or I will fire you." I felt I had nobody to tell what happened and I feared I would loose my job that I needed to support my family over in Haiti. I was told that Lim Jones would tell everybody at work under the breezeway at the 58th Street Solid Waste about the sexual things he did to me. I would be sitting there but did not fully understand what he was saying and laughing about. I would walk away alone ashamed and embarrassed. I have never went on a date with Lim Jones.

7. In 1995, while Carl Stringer was Supervisor I, there was a meeting between the temporary workers and Mr. Stringer. After the meeting, Lim Jones said to me "stupid Haitian you don't know how to speak English; fucking Haitian don't talk English, talk shit." Mr. Stringer told me to go work with Lim Jones. I told Mr. Stringer, "I no work with Lim Jones no more; Lim Jones said to me 'fucking Haitian talk shit no talk English.'" Later that day, Mr. Stringer reassigned me from the crane to the clean up crew. Sometime later they reassigned me to clean the office and Mr. Stringer was promoted from a Trash Supervisor I to a Garbage Supervisor II. He was no longer over me. Coleman Tyler became acting Trash Supervisor I and David White was Supervisor II over me.

8. Once in 1995, Lim Jones drove the county trash truck and took me to a motel without my knowledge and consent. The motel was located on 27th Avenue and Northwest 7th Street. I do not know the name of the motel. It was lunchtime. Lim Jones said, "I go to restaurant and get you lunch." I saw that it was not a restaurant. He told me, "come here Francine." I came to him and he gave me a fight and had forced me to have sex with him in the motel room.

9. Once in 1996, I wore sandals to work and Coleman Tyler, Trash Supervisor I, told me that I needed to go home and change into shoes. Coleman Tyler told Don Godwin, Trash Supervisor I who had been transferred from down south to the 58th Street station, to take me home in the county car. At that time, I lived on 131st Street and

Northeast 7th Avenue. Before we went to my apartment, Don Godwin took me to a remote area and began to push and pull on me. He said, "I am your boss and supervisor over you; fucking Haitian; if you tell somebody, I will fire you." Don Godwin forced me to have sex with him in the county car on that day. After he finished with me, he took me home and said, "Francine, you stay home and I will pay you for a full day." I only received 4 hours pay for that day. I told no one about this because I feared for my job and was ashamed and embarrassed.

10. One day in 1997, Eusebio Carbo, supply/box house man, did not come to work. I asked Don Godwin for cleaning supplies. We were both in the box house where the supplies are stored. Don Godwin fought with me and forced me to have oral sex and intercourse. He pulled me by my hair and force my mouth onto his penis and told me, "suck it bitch, you mother-fucking Haitian or I will fire you." He only had sex with me in the box house once. I was reassigned by Don to work on the crane with Lim Jones.

11. In May of 1997, Don Godwin wanted to take me home. I told him, "no because I have a husband." I have a live-in boyfriend named, Jonas Temoahee. (I have not told my boyfriend what was happening to me because I was embarrassed.) Don Godwin then asked Denise Alabre, Waste Attendant at the 79th Street dump, could he go to Denise house with me. Sometimes Denise drives me home from work. Denise told him "no, because my husband is at home." On that day, Denise took me home and I walked home from her house. Previously, Denise told me about her past and how she had had sex with Bobby Tomlin, former Chief of Trash, and others for two years before she was hired by the county. She said that Mr. Tomlin was told that Denise did not speak English and should not be hired. Mr. Tomlin allegedly responded that Cubans don't speak English and they get hired. He asked Denise for her social security number, he put it into the computer and she was hired. Denise explained to me, "Francine, you have sex and you get job with county." Denise presently lives at 13300 N.E. 6th Avenue, Apt. #204, Miami, FL 33162; she presently has no telephone.

12. On Wednesday, June 25, 1997, the clean up crew I worked with did overtime under the supervision of Ron Relaford, Waste Attendant II. On that day, Don Godwin picked me up and took me to a remote place somewhere near 215th Street and between northwest 47th Avenue and 27th Avenue. This place is near the expressway and there are

3

no houses or businesses nearby. Don Godwin parked the county car near a lot of debris that included a discarded living furniture. I got out of the truck and Don Godwin forcefully pushed me and held me down. He hit me and pulled his pants off. He pulled my hair and pulled my clothes off and forced me to have oral sex and sexual intercourse with him without my consent. He would always call me bad names. Don Godwin said, "I am the boss man over you; I am your supervisor; if you tell somebody about this, I'll fire you, you fucking Haitian." During the encounter, I told him, "no, no, Don, no, no." Lim Jones would say, "take it easy Francine; if you tell somebody, I'll fire you." The same thing happened in the above-described remote area on at least three (3) occasions, once from Ron's crew and twice from Lim Jones' crew. In addition, Don Godwin has picked me up from the crane many times and taken me to other areas including the home a man named "Buck" who is a friend of Don Godwin and Coleman Tyler. Buck lives on or near 56th Street and about northwest 24th Avenue near Joe Caleb Center. Don Godwin has forced me to have sex in the county truck and county car. Don Godwin would never use any protection.

13. On many occasions while I worked cleaning the office, Don Godwin would force me to have oral sex and intercourse without my consent. He would force me to have sex in the office bathroom and in the box house. This occurred as recent as August 14, 1997. While I was cleaning the office bathroom, he shut the door and said, "suck that for me, Francine, suck." He was pulling my hair and pointing at his genitals. I told him, "no Don, somebody come; please no." Don Godwin said, "nobody could see, suck Francine, suck." There are no windows in the bathroom. We in fact had a sexual encounter on this day without my consent and without protection. I distinctly remember this day because on August 15, 1997, Don Godwin asked, "Francine, where do you want to work" and I told him, "I had no problem, I work where ever they send me." On or about this day, Denise Alabre told me that Don Godwin had told her to tell me that "it is not my fault Francine wasn't hired; I sent her name downtown; please tell her not to be mad with me."

14. On August 15, 1997, I received a device which appeared to be a radio from Jennie Gamble, temp. waste attendant. She did not explain to me what it was. I though it was a radio. I put it in my purse. While I was on the crane, I opened my purse in the

4

presence of Lim Jones. He saw the device and said to me, "you have a tape-recorder." I told him, "no this is radio 'Nene' gave me." Lim Jones then told Clem Hamilton, Trash Truck Driver, "Francine has a lawyer's tape-recorder." He further said, "this is no radio, this means you got a lawyer." He asked me, "is something wrong, Francine?" I told him again, "this Nene's radio."

15.  On Monday, August 25, 1997, Alonzo Wright, Supervisor II, told certain temps to go home because temps do not work on Mondays. However, they let temps work who had been there only 2 weeks to a month. I felt it was unfair to send new temps out and not send us. I said, "if every temp don't work, then every temp don't work." Then we went to the big boss, David White, Chief of Trash. Mr. White said, "call Alonzo Wright." We he came, we were standing there waiting but was asked to leave the room. We waited about 1 hour but no one told us anything. Bertha Gomez, temporary Waste Attendant, Jennie Gamble, temporary Waste Attendant, and I decided to go to the Kroger Building located at 8675 N.W. 53rd Street, to speak with Mr. Andy Wilfork, Director, about several problems encountered on the job. We wanted to tell him about sexual harassment by supervisors and the unfair treatment of temps. We were told that Mr. Wilfork was on vacation and Pamela Payne, Manager of Human Resources, spoke with us.

16.  During the month of August, 1997, I became so tired of what was happening to me that I wanted to tell someone. I no longer cared how I looked when I came to work. I wanted to quit the job. I would tell Jennie Gamble that I was tired and wanted to quit but I gave her no reason. I have blurted out to Inetha Hawkins (Nite) and told her, "Don hurt me; Lim hurt me; Don fucked me; Don big." Nite told me to report it. She told me to call channel 7. She spoke to Jean about what she was concerned for me. I went to the doctor because I was hurt. I took medicine, Motrin 800 mg. Nite asked me, "why are you taking that medicine?" I told Nite, "me hurt."

17.  On August 25, 1997, I decided upon the urging of Bertha that I would tell Pamela Payne. While alone with Ms. Payne, I began to talk to her about Lim Jones and Don Godwin. She then called David White, Chief of Trash, and had me to tell about the sexual encounters in front of him. I, again, told what had been happening to me by Lim Jones and Don Godwin. She then said she needed to get an interpreter for me and that

she would rescheduled me to come talk to her. I thought I was to go back the next day but was told by Mr. Edwards that I would not go until Thursday, August 28, 1997. Then on Thursday, I was told to go on Friday, August 29, 1997. I felt I needed a lawyer and somebody gave me a business card for Patricia C. Ellis, Esq., and I contacted her on Thursday night and asked her to represent me at the meeting with Ms. Payne because I was afraid I would be in trouble and be fired.

Prior to going to the appointment and before I contacted Ms. Ellis, Kenneth Edwards, Supervisor I, suggested that I take Jean Baptiste Gachlin, Crane Operator, to Kroger Building with me because I did not speak nor understand English very well. I did not follow Mr. Edwards' advice and wanted a lawyer instead. I told my boyfriend what was happening because I felt he would find out anyway.

18. Inetha Hawkins, a county employee aka Nite, who lives at 2505 W. 5th Ave., Hialeah, FL, telephone number is (305) 888-3372, says she knows that Don Godwin and Lim Jones would have rough sex with me in the office bathroom and on the office desk because I have blurted it out to her. Karen Williams, aka Twin, said she seen Lim Jones do things wrong on the job including paying a street woman money to have sex with Mr. Wright's nephew, Cameron Oakes, on the county truck. About six (6) months ago before I went to the Kroger building, a male Haitian co-worker named Yvonne (last name unknown) who work at Palm Springs North mini dump told me, "not to be mad but that he had heard people saying that you [I] had sexual encounters with those guys. I do not wish you to do that any more." Also, someone named Alex told me that "he hear people talking about me that while I was working in the office and went to the garage and had sexual relations." He said that he "is a Haitian and when I hear someone saying bad things about you it makes me feel bad." These people don't talk because they do not want to talk because Lim Jones talk to them. Once during one of the sexual encounters with Lim, Jones told an employee named Carlos not to come in the garage. Lim Jones and I were in the truck and Lim backed up the crane into the garage and blocked it with the truck and had forced sex with me. Lim has told co-workers that I am his girlfriend in front of me. I have never had a relationship with Lim outside of work. Lim has had a mentally retarded co-worker named Morris

Woodmore to take off all of his clothes under the false impression that I was going to have sex with him.  Lim Jones has had Morris to give me $20.00 but I refused to take it.

19.  On August 29, 1997, I reported to the Koger Building with my attorney, Ms. Ellis.  Ms. Payne and Juan De Ona, Dade County Fair Employment Practices Specialist, decided to cancel the meeting and reschedule so that a county attorney could be present.

20.  Since I started to work there and to this day, whenever I went out on the crane and needed to go to the bathroom, none of the crane operators would take me to the bathroom.  I say to Lim Jones, "I go to bathroom."  He would park the crane and say, "pee-pee right there (pointing at the ground)."  He would watch me pull down my panties and urinate [pee pee/piss].  When I work with Mosses Jackson, crane operator, he tell me, "pee pee (pointing to the truck)."  I would crawl up inside of the dump truck and piss in there.

21.  On September 8, 1997 at 10:00 a.m., I along with my attorney went to the Stephen P. Clark Center, 111 N.W. 1st Street, Suite 2720.  I gave my statement to Ms. Payne, Mr. De Ona and William X. Candela, Assistant County Attorney for Dade County.  The interview took approximately three (3) hours with an interpreter present.

22.  On September 8, 1997, I filed an EEOC complaint for the above-mentioned reasons and because I believe that I have been sexually harassed and discriminated against based upon my sex and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended.

Further Affiant Sayeth Naught.

I have read this Affidavit consisting of __7__ typed pages and swear that these facts are true and correct to the best of my knowledge and belief.

FrANCoise SAmed.
Francoise Samedi, Affiant

Subscribed and sworn to before me
this _19th_ day of January, 1998.

Notary Public, State of Florida

My Commission Expires:

PATRICIA C ELLIS
My Commission CC391677
Expires Aug. 12, 1998
Bonded by HAI
800-422-1555

7

## METRO___ ___DE COUNTY AFFIRMATIVE ACTION ___ ___CE
## COMPLAINT INTAKE FORM

_____ Interview _____ Phone _____ Walk-in

I. **Personal Data:**

Name: _Francois  Samedi_
Address: _13055 NE 6 Ave #814, Miami, FL  33161_
Phone:   (H) _(305) 893-5902_ _____   (W) _____ .

Voluntary self-identification for Affirmative Action accountability

Race/Ethnicity: _____B _____H _____W _____O

Sex: M / ⓕ

II. **Basis of Discrimination Complaint:**

_____ race _____✓ sex _____ religion _____✓ national origin _____ age (40-70yrs.)
_____ color _____ disability _____ other (specify) _____

III. **Educational Background:**

_____ H/S Graduate _____College _____Graduate Level
_____ Vocational _____Educational Training

IV. **Employment History/Metro-Dade County Government:**

*Current Employee:*

Dept./Division _____   DOH in County _____

Job Classification _____

Supervisor _____   Length of Employment in Dept. _____

Probationary Period Completed? _____ Yes _____ No

Are you on any eligibility lists? _____ Yes _____ No .

If yes, how long have you been on the list? _____

Date terminated or laid-off (if applicable). _____ .

*Applicants:*

Position applied for _____

Department _____

Interviewer(s) _____

Were you notified as to the outcome of your interview? _____

Did you have to take an exam? _____ Yes _____ No

If so what what type of exam? _____

EXHIBIT "C"

V.  **Specific allegations:** Complainant complains of sexual harassment + sexual battery against Donald Godwin, Supr I and Linn Jones, Crane Operator. Both men hold supervisory powers over Complainant who is temporary. Both men promised a permanent position to Complainant in exchange for sex. Both men have forced themselves sexually upon Complainant without her consent.

VI.  **Action taken by the complainant (charging party):**

Have you discussed this matter with your supervisor or director (if applicable)? __✓__ Yes _____ No

If yes, give name and date of the conference(s) Pamela Payne   8/25/97

What was the action taken or result, if any? Contacted Fair Employment Practices + to get interpreter because Complainant is Haitian + speaks little English.

Have you filed a complaint with any other agency? _____ Yes __✓__ No

If yes, give agency and date filed _____

VII.  **Declaration of truthfulness:**

I attest that the statements given above are true and correct to the best of my knowledge and give my consent to the Affirmative Action Director and Staff to investigate my complaint and use my name in the investigation.

Francoise Samedi
**Complainant Signature**

9/8/97
**Date**

Juan de Ona
**Interviewer (staff) Signature**



**U.S. Departme      ˚ Justice**

Civil Rights Division

**NOTICE OF RIGHT TO SUE**
**WITHIN 90 DAYS**

CERTIFIED MAIL
Z 394 099 387

*Washington, DC 20530*
September 9, 1998

Ms. Francoise Samedi
c/o Patricia C. Ellis, Esquire
Attorney at Law
P.O. Box 540516
Opa-Locka, FL  33054-0516

Re:  EEOC Charge Against Metro Dade County, Solid Waste
     Management
     No. 150974329

Dear Ms. Samedi:

     Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the
date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a
civil action under Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. 2000e, et seq., against the above-named
respondent.
     If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.
     The investigative file pertaining to your case is located in
the EEOC Miami District Office, Miami, FL.
     This Notice should not be taken to mean that the Department
of Justice has made a judgment as to whether or not your case
is meritorious.

                              Sincerely,

                              Karen L. Ferguson
                              Civil Rights Analyst
                       Employment Litigation Section

cc:  Miami District Office
     Metro Dade County, Solid Waste Management

—          EXHIBIT "B"          —

## METRO___ DE COUNTY AFFIRMATIVE ACTION ___ CE
## COMPLAINT INTAKE FORM

_____ Interview _____ Phone _____ Walk-in

**I.    Personal Data:**

Name: Francois Samedi

Address: 13055 NE 6 Ave #214, Miami, FL 33161

Phone:   (H) (305) 893-5902            (W) _____

Voluntary self-identification for Affirmative Action accountability

Race/Ethnicity:   _____B    _____H    _____W    _____O

Sex: M / (F)

**II.   Basis of Discrimination Complaint:**

_____ race    ✓ sex    _____ religion    ✓ national origin    _____ age (40-70yrs.)
_____ color    _____ disability    _____ other (specify) _____

**III.  Educational Background:**

_____ H/S Graduate    _____ College    _____ Graduate Level
_____ Vocational       _____ Educational Training

**IV.   Employment History/Metro-Dade County Government:**

*Current Employee:*

Dept./Division _____    DOH in County _____

Job Classification _____

Supervisor _____    Length of Employment in Dept. _____

Probationary Period Completed? _____ Yes _____ No

Are you on any eligibility lists?   _____ Yes _____ No

If yes, how long have you been on the list? _____

Date terminated or laid-off (if applicable). _____

*Applicants:*

Position applied for _____

Department _____

Interviewer(s) _____

Were you notified as to the outcome of your interview? _____

Did you have to take an exam? _____ Yes _____ No

If so what what type of exam? _____

—          EXHIBIT "C"          —

V.   **Specific allegations:** Complainant complains of sexual harassment + sexual battery against Ronald Godwin, Supr. T and Lion Jones, Crane Operator. Both men hold Supervisory powers over Complainant who is temporary. Both men promised a permanent position to Complainant in exchange for sex. Both men have forced themselves sexually upon Complainant without her consent.

VI.   **Action taken by the complainant (charging party):**

Have you discussed this matter with your supervisor or director (if applicable)? ✓ Yes _____ No

If yes, give name and date of the conference(s) Pamela Payne 8/25/97

What was the action taken or result, if any? Contacted Fair Employment Practices + to get interpreter because Complainant is Haitian + speaks little English.

Have you filed a complaint with any other agency? _____ Yes ✓ No

If yes, give agency and date filed _____

VII.   **Declaration of truthfulness:**

I attest that the statements given above are true and correct to the best of my knowledge and give my consent to the Affirmative Action Director and Staff to investigate my complaint and use my name in the investigation.

Francoise Samedi
**Complainant Signature**

9/8/97
**Date**

Juan de Onal
**Interviewer (staff) Signature**

# OFFENSE-INCIDENT REPORT

## METRO-DADE POLICE DEPARTMENT

| | | |
|---|---|---|
| | Agency Report Number | 4,5,7,5,8,5,T |
| 1. Original  2. Supplement | | 1 |

**Date of Supplement**

| Original Day Reported | Date | Time Dispatched (mil) | Time Arrived (mil) | Time Completed (mil) |
|---|---|---|---|---|
| FRI | 0,9 | 1,2,9,7 | 1,4,3,0 | 1430 | 1430 | 2300 |

| Incident Type | Incident: Day | Date (mil) | | Day | Date (mil) | |
|---|---|---|---|---|---|---|
| 1. Felony | From | UNK | 1992 | UNK | To | THU | 08/14/97 | UNK |

| OFF/INC | Description | A-Attempted C-Committed | Statute Violation Number | NCIC/UCR Code |
|---|---|---|---|---|
| #1 | 1 | SEXUAL BATTERY | C | 7,9,4 H 0,1,1 | NOA |
| #2 | | | | | |

| Incident Location (Street, Apt. Number) | City | Zip | District | Grid | Area | Zone |
|---|---|---|---|---|---|---|
| | | | D,0,9 | 0,4 | 0,1 | |

| Business Name | Forced Entry 0 N/A 2. No 1. Yes | Occupancy 0. Unoccupied 1. Occupied | |
|---|---|---|---|
| | 0,1 | 0 | 0 |

**Location Type**
- 01. Residence-Single
- 02. Apartment/Condo
- 03. Residence-Other
- 04. Hotel/Motel
- 05. Convenience Store
- 06. Gas Station
- 07. Liquor Sales
- 08. Bar/Nightclub
- 09. Supermarket
- 10. Dept/Discount Store
- 11. Specialty Store
- 12. Drug Store/Hospital
- 13. Bank/Financial Inst
- 14. Commercial/Office Bldg.
- 15. Industrial/Mfg
- 16. Storage
- 17. Gov't/Public Bldg
- 18. School/University
- 19. Jail/Prison
- 20. Religious Bldg
- 21. Airport
- 22. Bus/Rail Terminal
- 23. Construction Site
- 24. Other Structure
- 25. Parking Lot/Garage
- 26. Highway/Roadway
- 27. Park/Woodlands/Field
- 28. Lake/Waterway
- 29. Motor Vehicle
- 30. Other Mobile
- 99. Other

| # OFF/INC | # Victims | # Offenders | # Prem. Ent. | # Veh. Stolen | Type Weapon | |
|---|---|---|---|---|---|---|
| 01 | 01 | 02 | 000 | 000 | | 1,7 |

Type Weapon: 02. Rifle  03. Shotgun  04. Firearm | 05. Knife/Cutting Instrument  06. Blunt Object | 07. Hands/Fist/Feet  08. Personal  09. Explosives | 10. Fire/Incendiary  11. Simulated Weapon  12. Simulated Weapon | 13. Drugs  99. Other
01. Handgun

| V/W Code | Victim Type | Race | Sex | Residence Type | Residence Status | Extent of Injury |
|---|---|---|---|---|---|---|
| V-Victim  V-Proprietor | 1. N/A  4. Business | N-N/A  I-American Indian | N-N/A  M-Male | 0. N/A  4. Florida | 0. N/A  4. Out-of-State | 0. N/A  1. Full Year | 0. None  1. Minor |
| W-Witness  Z-Other | 1. Juvenile  5. Government | W-White  O-Oriental/Asian | M-Male  F-Female | 1. City  5. Out-of-State | 2. County | 2. Part Year | 2. Serious |
| C-Reporting Person | 2. L.E. Officer  6. Church | B-Black  U-Unknown | F-Female  U-Unknown | 2. County | | 3. Non Resident | 3. Fatal |
| | 3. Adult  9. Other | | | | | | |

**Injury Type**
- 00. N/A
- 01. Gunshot
- 02. Stabbed
- 03. Laceration
- 04. Unconscious
- 05. Poss. Broken Bones
- 06. Poss. Internal Injury
- 07. Loss of Teeth
- 08. Burns
- 09. Abrasions/Bruises
- 99. Other

**Victim Relationship To Offender**
- 00. N/A
- 01. Undetermined
- 02. Stranger
- 03. Spouse
- 04. Ex-Spouse
- 05. Co-Habitant
- 06. Parent
- 07. Brother/Sister
- 08. Child
- 09. Step-Parent
- 10. Step-Child
- 11. In-Law
- 12. Other Family
- 13. Student
- 14. Teacher
- 15. Child of Boy/Girl Friend
- 16. Boy/Girl Friend
- 17. Friend
- 18. Neighbor
- 19. Sitter/Day Care
- 20. Employee
- 21. Employer
- 22. Landlord/Tenant
- 23. Acquaintance
- 99. Other Known

| OFF/INC Indicator 1 #1 3 Both 2 #2 | V/W Code | V. Type | Name (Last, First, Middle or Business) | Residence Phone |
|---|---|---|---|---|
| 1 | V 01 | 3 | | |

| Address (Street, Apt. Number) | City | State | Zip | Business Phone |
|---|---|---|---|---|
| | | | | |

Other Contact Info.

| V/W Code  V, W, or F | Race | Sex | Res Type | Res. Status | Extent of Injury | Injury Type(s) | Relationship | Ethnicity | Will victim prefer charges? Yes X No |
|---|---|---|---|---|---|---|---|---|---|
| | | | 2 | 1 | 0 | 0 0 | 99 | | |

| OFF/INC Indicator 1 #1 3 Both 2 #2 | V/W Code | V. Type | Name (Last, First, Middle or Business) | Residence Phone |
|---|---|---|---|---|
| | | | | |

| Address (Street, Apt. Number) | City | State | Zip | Business Phone |
|---|---|---|---|---|
| | | | | |

Other Contact Info. (Time Available, Interpreter, etc.) | Synopsis of Involvement

| V/W Code  V, W, or F | Race | Sex | Date of Birth or Age | Res. Type | Res. Status | Extent of Injury | Injury Type(s) | Relationship | Ethnicity | Will victim prefer charges? Yes [] No [] |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

| OFF/INC Indicator 1 #1 3 Both 2 #2 | Suspect Code S-Suspect E-Escape A-Arrestee Z-Other | Code # | Juvenile | Name (Last, First, Middle) |
|---|---|---|---|---|
| 1,1 | | S 01 | | GODWIN, DONALD |

| Maiden Name | Nickname/Street Name | Place of Birth | Residence Phone 1 620-0860 |
|---|---|---|---|
| | | | |

| Last Known Address (Street, Apt. Number) | City | State | Zip | Business Phone |
|---|---|---|---|---|
| 3941 NW 172 TR. | MIAMI | FL. | 33055 | |

| Occupation SUPERVISOR 1 | Employer/School | Address | Social Security Number |
|---|---|---|---|
| | | | |

| D/W's License State/Number | Immigration and Naturalization Number | Other I.D. Number | OBTS Number (Arrested) | FBI/NCIC |
|---|---|---|---|---|
| | | | | |

Clothing (Describe) | Scars/Marks/Tattoos (Location/Describe)

| Race B | Sex M | Date of Birth or Age 1,2,2,P,4,13 | Height | Weight | Eye Color | Hair Color | Hair Length | Hair Style |
|---|---|---|---|---|---|---|---|---|
| Complexion | Build | Facial Hair | Teeth | Speech/Voice | Special Identifiers | | | |

**NARRATIVE**

THE VICTIM SUBMITS TO VAGINAL AND ORAL INTERCOURSE WITH THE SUBJECTS UNDER FEAR OF LOSING HER JOB.

EXHIBIT "D"                    SEE SUPPLEMENTARY REPORT

Person/Unit Notified

| Officer(s) Reporting DET. L. VERKER | I.D. Number(s)/Locator Code 2635/SCB | Unit 3322 |
|---|---|---|
| Officer Reviewing (if Applicable) SGT. | I.D. Number 2203 | Routed To SCB | Referred To VERKER | Assigned To 3308 | Date 9-13-97 |

| Case Status | Clearance Type 1 Arrest  3 Unfounded | A-Adult  J-Juvenile | Date Cleared | Jail Number | Number Arrested |
|---|---|---|---|---|---|

PERSON(S) REPORT

**METRO-DADE POLICE DEPARTMENT**

| | | |
|---|---|---|
| | | Juvenile in Report |
| | | 1. Original 2. Supplement |

**Primary Offense Description:** SEXUAL BATTERY

**Victim #1 Name:** (redacted)

## CODES

**V/W Code**
- V-Victim
- W-Witness
- C-Reporting Person
- P-Proprietor
- Z-Other

**Victim Type**
- 0 N/A
- 1 Juvenile
- 2 L.E. Officer
- 3 Other
- 4 Business
- 5 Government
- 6 Church

**Race**
- N N/A
- W White
- B Black
- I American Indian
- O Oriental/Asian
- U Unknown

**Sex**
- N N/A
- M Male
- F Female
- U Unknown

**Residence Status**
- 0 N/A
- 1 City
- 2 County
- 3 Florida
- 4 Out of State

**Insurance Status**
- 0 N/A
- 1 Full Year
- 2 Part Year
- 3 Non Resident

**Extent of Injury**
- 0 None
- 1 Minor
- 2 Serious
- 3 Fatal

**Injury Type**
- 00 N/A
- 01 Gunshot
- 02 Stabbed

- 03 Laceration
- 04 Unconscious
- 05 Poss. Broken Bones
- 06 Poss. Internal Injury

- 07 Loss of Teeth
- 08 Burns
- 09 Abrasions/Bruises
- 99 Other

**Victim Relationship to Offender**
- 00 N/A
- 01 Undetermined
- 02 Stranger
- 03 Spouse
- 04 Ex-Spouse
- 05 Co-Habitant
- 06 Parent
- 07 Brother/Sister
- 08 Child
- 09 Step Parent
- 10 Step Child
- 11 In Law
- 12 Other Family
- 13 Student
- 14 Teacher
- 15 Child of Boy/Girl Friend
- 16 Boy/Girl Friend
- 17 Friend
- 18 Neighbor
- 19 Sitter/Day Care
- 20 Employee
- 21 Employer
- 22 Landlord/Tenant
- 23 Acquaintance
- 99 Other Known

## SUSPECT OR MISSING PERSON

**OFF/INC Indicator:** 1 (#1), 3 Both

**V/W Code:** 1

**Suspect Code**
- S-Suspect
- A-Arrestee
- E-Escapee
- M-Missing
- R-Recovered Missing
- Z-Other

**Code:** SP2

**Name (Last, First Middle):** JONES, LEM

**Residence Phone:** 676-4419

**Last Known Address (Street, Apt. Number):** 6320 NW 24 PL

**City:** MIAMI   **State:** FL   **Zip:** 33147

**Business Phone:** (redacted)

**Occupation:** KRANE OPER.

**Race:** B   **Sex:** M   **Date of Birth or Age:** 12 28 43

## ADMINISTRATIVE

**Officer(s) Reporting:** DET. G. VELKEN

**ID Number(s)/Locator Code:** 2635/SCB

**Unit:** 3322

**Date:** 9/12/97

**NARRATIVE CONTINUATION**

2

**METRO-DADE POLICE DEPARTMENT**

| Date of Supplement | Gang Related | | Agency Report Number | 4 5 5 7 5 | 8 5 T |
|---|---|---|---|---|---|
| 1 0 2 3 9 7 | | | | | |

| Original Date Reported | Original Primary Offense Description | | A-Attempted C-Committed | New Statute Violation Number | Original OFF/UCR Code |
| 0 9 1 2 9 7 | Sexual Battery | | | | |

Original OFF/INC Location · Primary Offense Changed To · New NCIC/UCR Code

**DATE:** From an unknown date in 1992 to 8/14/97.

**LOCATION:** ▓▓▓▓▓▓, Miami, Dade County, Florida ▓▓▓▓▓▓), as well as various unknown locations within Dade County, Fla.

**VICTIM:** ▓▓▓▓▓▓ years of age, DOB ▓▓▓▓ Resides at ▓▓▓▓▓▓ Home phone: ▓▓▓ Employed as a temporary ▓▓▓▓ attendant for ▓▓▓▓▓▓ located at ▓▓▓▓ Work phone: ▓▓▓ The victim has no past criminal history with MDPD.

**SUBJECT:** 1) GODWIN, Donald B/M 43 years of age, DOB: 7/12/54. Resides at 3941 N.W. 172nd Terr., Miami, Fla. 33055. Home phone: 620-0860. Employed as a ▓▓ Supervisor One, for Dade County Dept. of ▓▓▓▓ located at ▓▓▓▓, Miami, Fla. 33166. Work phone: ▓▓▓ The subject has no past criminal history with MDPD.

2) JONES, Lem B/M 53 years of age, DOB: 12/28/43. Resides at 6320 N.W. 24th Place, Miami, Fla. 33147. Home phone: 696-4419. Employed as a ▓▓ Crane

| Suspect Code | Code # | Offense Indicator | Residence Type | Citizenship | Drug Indication | Alcohol Indication |
|---|---|---|---|---|---|---|
| S - Suspect   A - Arrestee | | 1 xxx   3 Both   2 #2 | 1 City   3 Florida   2 County   4 Out of State | | 1 Yes   8 Unknown   2 No | 1 Yes   8 Unknown   2 No |

| Drug Activity   S Sell | R Smuggle | K Dispense/ | M Manufacturer/ | Drug Type | B Barbiturate | P Paraphernalia | 1 Unknown |
| N N/A   B Buy | D Deliver | Distributor | Producer | N N/A | C Cocaine | Equipment | Z Other |
| P Possess   T Traffic | E Use | | Cultivate | A Amphetamine | E Heroine | M Marijuana   O Opium Drs   S Synthetic | |

Juvenile Suspect fields: Parent / Legal Custodian / Other — Name of Parent or Custodian (Last, First, Middle) — Residence Phone — Address (Street, Apt. Number) — (City) (State) (Zip) — Business Phone — Notified By (Name) — Date — Time — Juvenile Disposition — Released to (Name) — Relationship — Date — Time

Person/Unit Notified · Time · Related Report Number(s)

DETECTIVE L. VELKEN/rb · ID Number(s)/Locator Code 2635-SCB · Unit 3322 · 10-23-97

SCB · 3308 · 11/7/97

CLEARED · Clearance Type: 1 Arrest  2 Exceptional  3 Unfounded  4 Open Pend · 2 · A 1 0 2 3 9 7

## NARRATIVE CONTINUATION

| | | |
|---|---|---|
| | Juvenile in Report | 1 Original 2 Supplement |

**METRO-DADE POLICE DEPARTMENT** — 2

| Date of Supplement | Agency Report Number |
|---|---|
| 1 0 2 3 9 7 | 4 5 7 5 8 5 T |

| Original Date Reported | Original Primary Offense Description | Victim #1 Name | Original NCIC/UCR Code |
|---|---|---|---|
| 0 9 1 2 9 7 | Sexual Battery | | 110A |

| Original OFF/INC Location | Primary Offense Changed To | A–Attempted C–Committed | New NCIC/UCR Code |

Operator for Dade County Department of ▮▮▮▮▮
located at ▮▮▮▮▮▮▮▮, Miami, Fla. 33166.
Work phone: ▮▮▮▮▮

**WITNESS(ES):**        None.

**WEAPON:**        None.

**INJURY:**        None.

**VEHICLE:**        None.

**PROPERTY TAKEN:**        None.

**M.O.:**        During the span of five years the victim submits to sexual intercourse and fellatio with the subjects under the fear of dismissal from her job.

**NARRATIVE SUMMARY:**

On 9/12/97 at approximately 2:30 p.m. the victim responded to the Sexual Crimes Bureau accompanied by her attorney, PATRICIA ELLIS. An attempt was made to interview the victim but I was advised by her attorney that she did not speak English. After a brief introduction I met with the victim's attorney PATRICIA

| Suspect Code | Code # | Offense Indicator | Residence Type | Citizenship | Drug Indication | Alcohol Indication |
|---|---|---|---|---|---|---|
| S – Suspect  A – Arrestee | | 1 #1  3 Both | 1 City  3 Florida | | 1 Yes  8 Unknown | 1 Yes  8 Unknown |
| | | 2 #2 | 2 County 4 Out of State | | 2 No | 2 No |

| Drug Activity | S Sell | H Smuggle | K Dispenser | M Manufacturer | Drug Type | N Barbiturate | O Hallucinogen | P Paraphernalia | U Unknown |
|---|---|---|---|---|---|---|---|---|---|
| N N/A | B Buy | D Deliver | Distribute | Produce | N N/A | C Cocaine | M Marijuana | S Equipment | Z Other |
| P Possess | T Traffic | E Use | | Cultivate | A Amphetamine | E Heroine | Q Opium/Der | Y Synthetic | |

| Suspect Code | Name of Parent or Custodian (Last, First, Middle) | | Residence Phone |
|---|---|---|---|
| 1 Parent  2 Legal Custodian  3 Other | | | |

| Address (Street, Apt. Number) | City | State | Zip | Business Phone |
|---|---|---|---|---|

| Notified by (Name) | Date | Time | Juvenile Disposition | |
|---|---|---|---|---|
| | | | 1 Handled/Processed Within Dept. and Released | 2 Turned Over to HRS/CYF |
| Released to: (Name) | | | | 3 Incarcerated (County Jail) |

| Person/Unit Notified | Time | Related Report Number(s) |
|---|---|---|

| Officer(s) Reporting | ID. Number(s)/Locator Code | Unit | | Date |
|---|---|---|---|---|
| DETECTIVE L. VELKEN/rb | 2635–SCB | 3322 | | 10–23–97 |

| Officer(s) Reviewing (If Applicable) | ID. Number | Routed To | Referred To | Assigned To | By |
|---|---|---|---|---|---|

| Case Status | Clearance Type | | | Date Cleared | Jail Number | Number Arrested |
|---|---|---|---|---|---|---|
| CLEARED | 1 Arrest  2 Exceptional | 3 Unfounded  4 Open Pend | 2 | A 1 0 2 3 9 7 | | 0 1 |
| Exception Type | 1 Arrest on Primary | 2 Death of Offender | 3 Prosecution Declined | OBTS Header | | Page |

**NARRATIVE CONTINUATION**

**METRO-DADE POLICE DEPARTMENT**

| Date of Supplement | | Gang Related | | | | Juvenile In Report | | 1 Original 2 Supplement | **2** |
|---|---|---|---|---|---|---|---|---|---|

| | | | Agency Report Number | |
|---|---|---|---|---|
| 1 0 2 3 9 7 | | | 4 5 7 5 1 8 5 T 1 | |

| Original Date Reported | Original Primary Offense Description | Victim #1 Name | Original NCIC/UCR Code |
|---|---|---|---|
| 0 9 1 2 9 7 | Sexual Battery | | 110A |

| Original Off/INC Location | Primary Offense Changed To | A: Attempted C: Committed | New NCIC/UCR Code |
|---|---|---|---|

ELLIS in the victim/witness interview room #1.  Personal background data was obtained.  MS. ELLIS has a law practice from her home located at 1146 Dunad Ave., Opa Locka, Fla. 33054.  Home phone: 688-4572.  MR. ELLIS provided the following information regarding her involvement:

On 8/22/97 at approximately 12:30 a.m., MS. ELLIS stated she was telephonically contacted by the victim who stated that for the past five years she has been sexually harassed at her work place.  MS. ELLIS was retained by the victim.  The victim advised MS. ELLIS that she had made a complaint to PAMELA PAYNE, Manager of Human Resources with The Department of ▓▓▓▓▓ that she had been forced to have sex with the subjects while on duty.  The victim further advised MS. ELLIS that a conference had been scheduled for Friday, 8/29/97 regarding the victim's complaints.

On 8/29/97 MS. ELLIS accompanied the victim to the Dade County Department of ▓▓▓▓▓▓▓▓▓▓ located at ▓▓▓▓▓▓▓▓ Phone: ▓▓▓▓▓▓ Prior to the meeting MS. ELLIS was advised by PAMELA PAYNE that since the victim had retained an attorney, an assistant County manager would need to be present during the meeting.  MS. ELLIS stated that a subsequent meeting was then scheduled for 9/8/97.

On 9/8/97 at approximately 10:30 a.m., MS. ELLIS accompanied the victim to the Dade County Fair Employment Practices Department located at 111 N.W. 1st St. She and the victim met with PAMELA PAYNE, Manager of Human Resources for Department of ▓▓▓▓▓ JUAN DE-ONA, Specialist, Dade County Fair Employment Practices, WILLIAM CANDELA, Assisting County Manager, and a Creole speaking

| Suspect Code | | Code # | Offense Indicator | Residence Type | Citizenship | Drug Indication | Alcohol Indication |
|---|---|---|---|---|---|---|---|
| S - Suspect  A - Arrestee | | | 1 #1  3 Both  2 #2 | 1 City  3 Florida  2 County  4 Out of State | 1 Yes  8 Unknown  2 No | 1 Yes  8 Unknown  2 No | 1 Yes  8 Unknown  2 No |

| Drug Activity | S Sell | H Smuggle | K Dispenser | M Manufacture/ | 2 Other | Drug Type | B Barbiturate | H Hallucinogen | P Paraphernalia | U Unknown |
|---|---|---|---|---|---|---|---|---|---|---|
| N N/A | R Buy | O Deliver | Distribute | Producer/ | | N N/A | C Cocaine | M Marijuana | Equipment | Z Other |
| P Possess | T Traffic | E Use | | Cultivate | | A Amphetamine | E Heroine | O Opium/Dru | S Synthetic | |

| □1 Parent □2 Legal Custodian □3 Other | Name of Parent or Custodian (Last, First, Middle) | | | | Residence Phone |
|---|---|---|---|---|---|
| Address (Street, Apt. Number) | | (City) | (State) | (Zip) | Business Phone |

| Notified By: (Name) | | Date | Time | Juvenile Disposition 1 Handled/Fingerprinted Within Dept. and Released | 2 Turned Over to HRS/CYF 3 Incarcerated (County Jail) |
|---|---|---|---|---|---|
| Released to: (Name) | | | | Relationship | Date  Time |

| Person/Unit Notified | | Time | Related Report Number(s) |
|---|---|---|---|

| Officer(s) Reporting | ID. Number(s)/Locator Code | Unit | Date |
|---|---|---|---|
| DETECTIVE L. VELKEN/rb | 2635-SCB | 3322 | 10-23-97 |
| Officer Reviewing (If Applicable) | ID. Number | Routed To | Referred To | Assigned To | By |

| Case Status | Clearance Type | 1 Arrest | 3 Unfounded | A Adult | Date Cleared | Jail Number | Number Arrested |
|---|---|---|---|---|---|---|---|
| CLEARED | 2 Exceptional | 4 Open Pend. | 2 | J Juvenile | A 10 23 97 | | 0 1 |

**NARRATIVE CONTINUATION**

**METRO-DADE POLICE DEPARTMENT**

| | Gang Related | | | | Juvenile in Report | 1. Original 2. Supplement | 2 |

| Date of Supplement | | Agency Report Number | |
| 1 0 2 3 9 7 | | 4 5 7 5 8 5 T | |

| Original Date Reported | Original Primary Offense Description | Victim #1 Name | Original NCIC/UCR Code |
| 0 9 1 2 9 7 | Sexual Battery | A-Att... C-Committed | 110A |

| Original Off/INC Location | Primary Offense Changed To | | New NCIC/UCR Code |

interpreter with Dade County, JACQUELINE DALENCOUR.   MS. ELLIS stated that during the meeting the victim disclosed that she had been forced to have sexual intercourse with the subjects while on duty under the threat of dismissal from her job.   The victim stated the last incident occurred on 8/14/97 and was perpetrated by subject #1.   The victim stated that while cleaning the bathroom of the facility the subject entered the bathroom and had sex with her.   The victim stated that she was threatened many times by the subjects in the past that she would be dismissed from her employment with Dade County if she did not comply with their demands.

MS. ELLIS stated that the victim has been employed with Dade County Department of ▓▓▓▓▓▓▓ since 1992.   She stated the victim is from Haiti and was taken advantage of by the subjects when she was told that she had no rights and she believed this.

On 9/12/97 MS. ELLIS stated she responded to the Dade County State Attorney's Office.   She met with Assistant State Attorney, JOE CENTORINO in the Public Corruption Office who referred her to the Sexual Crimes Bureau.

I advised MS. ELLIS that it would be necessary for me to obtain a Creole speaking interpreter in order to conduct an interview of the victim.   MS. ELLIS stated that due to a scheduling conflict she and the victim would be unable to remain any longer at the Sexual Crimes Bureau.   The victim was given an Advice of Medical Services form, a copy of which was made a part of the case file. A formal interview of the victim was scheduled with MS. ELLIS and the victim for 9/17/97 at 12:30 p.m.

| Suspect Code | | Code # | Offense Indicator | | Citizenship | Drug Indication | Alcohol Indication | |
| S - Suspect   A - Arrestee | | | 1 #1 Both   2 #2 | 1 City   3 Florida 2 County   4 Out of State | | 1 Yes   8 Unknown 2 No | 1 Yes   8 Unknown 2 No | |
| Drug Activity | S Sell R Smuggle | K Smuggle | M Manufacture/ | Z Other | Drug Type | B Barbiturate | H Hallucinogen | U Unknown |
| N N/A | B Buy D Deliver | D Dispense/ Distribute | Produce/ | | N N/A | C Cocaine | M Marijuana | Equipment |
| P Possess | T Traffic E Use | | Cultivate | | A Amphetamine | E Heroine | O Opium/Der | S Synthetic |
| O 1 Parent | | Name of Parent or Custodian (Last, First, Middle) | | | | | Residence Phone |
| O 2 Legal Custodian | | | | | | | ( ) |
| O 3 Other | | | | | | | |
| Address (Street, Apt Number) | | | (City) | (State) | (Zip) | | Business Phone ( ) |
| Notified By: (Name) | | | Date | Time | Juvenile Disposition 1 Handled/Processed Within Dept and Released | 2 Turned Over to HRS/CYF 3 Incarcerated (County Jail) | |
| Released to: (Name) | | | | Relationship | | Date | Time |

| Person/Unit Notified | | Time | | Related Report Number(s) | |

| Officer(s) Reporting | | ID. Number(s)/Locator Code | Unit | | Date |
| DETECTIVE L. VELKEN/rb | | 2635-SCB | 3322 | | 10-23-97 |
| Officer Reviewing (If Applicable) | ID. Number | Routed To | Referred To | Assigned To | By | Date |
| Case Status CLEARED | Clearance Type 1 Arrest 2 Exceptional | 3 Unfounded 4 Open Pend | 2 | A Adult J Juvenile | A | Date Cleared 10 2 3 9 7 | Jail Number | Number Arrested 0 1 |
| Exception Type | 2 Arrest on Primary | 3 Death of Offender | | 5 Prosecution Declined | 0818 Number | | Page Page |

**NARRATIVE CONTINUATION**

2

| | | | |
|---|---|---|---|
| Gang Related | | Juvenile In Report | 1 Original 2 Supplement |

**METRO-DADE POLICE DEPARTMENT**

| Date of Supplement | | | Agency Report Number |
|---|---|---|---|
| 1, 0, 2, 3, 9, 7 | | | 4, 5, 7, 5, 8, 5, T |

| Original Date Reported | Original Primary Offense Description | Victim #1 Name | Original NCIC/UCR Code |
|---|---|---|---|
| 0 9 1 2 9 7 | Sexual Battery | | 110A |

| Original OFF/INC Location | Primary Offense Changed To | A-Attempted C-Committed | New Statute Violation Number | New NCIC/UCR Code |
|---|---|---|---|---|

victim stated that when she refused, subject #2 would strike her with his hands and fists all over her body. Subject #2 would then forcibly remove the victim's clothing and insert his penis into her vagina. Subject #2 also forced the victim to perform fellatio on him. The victim stated that the most recent incident occurred in July of 1997. She stated she does not recall the specifics of the incidents. The victim could only provide the following: The victim stated that she would accompany subject #2 on the ▓▓▓▓ truck. The subject would park the ▓▓▓▓ truck at an isolated location within Dade County. The subject would then strike the victim with hands and fists numerous times, forcibly remove her clothing and force his penis into her vagina. She stated subject #2 forced digital penetration of her vagina. The victim stated these incidents have occurred "so many times that I can't count." The victim later stated the incidents occurred approximately ten to twenty times.

The victim stated that although subject #2 has struck her numerous times over her body she never sustained any injuries or visible bruises. She stated that subject #2 has referred to her as his girlfriend to various co-workers. The victim however was not able to name any of the co-workers.

The victim stated that she had been residing with her boyfriend ▓▓▓▓ ▓▓▓▓ prior to her employment. She stated however that she never disclosed any information regarding the incidents to her boyfriend because she was embarrassed. The victim stated that once she disclosed the incident to PAMELA PAYNE, Manager of Human Resources, she decided to disclose the incident to her boyfriend, because she felt he would find out anyway.

| Officer(s) Reporting | ID. Number(s)/Locator Code | Unit | Date |
|---|---|---|---|
| DETECTIVE L. VELKEN/rb | 2635-SCB | 3322 | 10-23-97 |

| Case Status | Clearance Type | | Date Cleared | | Jail Number | Number Arrested |
|---|---|---|---|---|---|---|
| CLEARED | 1 Arrest   3 Unfounded 2 Exceptional  4 Open Pend. | 2 | A 10, 2, 3, 9, 7 | | | 0   1 |

**NARRATIVE CONTINUATION**

2

## METRO-DADE POLICE DEPARTMENT

| Date of Supplement | | | | | Agency Report Number | | Juvenile In Report | 1 Original 2. Supplement |
|---|---|---|---|---|---|---|---|---|
| 1 0 2 3 9 7 | | | | | 4 5 7 5 8 5 T | | | |
| Original Date Reported | Original Primary Offense Description | | Victim #1 Name | | | | | Original NCIC/UCR Code |
| 0 9 1 2 9 7 | Sexual Battery | | | | | | | 110A |
| Original OFF/INC Location | Primary Offense Changed To | | A Attempted C Committed | | | | | New NCIC/UCR Code |

The victim was asked what prompted her disclosure regarding the incidents after so many years of being assaulted.   The victim stated that on Monday, 8/25/97 she along with two co-workers, (                 the other is unknown) responded to work.   They were advised that there would no longer be any work for them on Mondays.   The victim stated they became agitated and responded to the Human Resources Office.   She stated they met with PAMELA PAYNE and voiced their displeasure at having been employed as a temp for so long without attaining a permanent position with Dade County Department of               .   The victim later stated she met with PAMELA PAYNE alone and disclosed to her the sexual assaults by subject #1 and subject #2.   She stated that she was advised by PAMELA PAYNE to return at a later date when a Creole speaking interpreter could assist her in understanding her allegations.   The victim stated that she never discussed the sexual assaults with anyone else.   The victim further stated that she has not discussed the sexual assaults with any of her co-workers.

The victim continued by stating that she has also been assaulted on numerous occasions by subject #1.   She stated that subject #1 has been her direct supervisor since approximately 1995.   She stated that she has been approached by subject #1 on numerous occasions and has been promised a permanent position for sexual favors.   She stated that when she refused, subject #1 would slam her onto the floor and force her to submit to sexual intercourse.   The victim stated the last incident occurred in August of 1997.   She stated she was cleaning the men's bathroom closest to the kitchen at the site located at            .      The subject  entered the bathroom and grabbed her by the arms. The subject told her that he was her boss and she was to do what he said.   She

| Suspect Code | | Code # | Offense Indicator | Residence Type | Citizenship | Drug Indication | Alcohol Indication |
|---|---|---|---|---|---|---|---|
| S - Suspect   A - Arrestee | | | 1 81   3 Both 2 #2 | 1 City   3 Florida 2 County  4 Out of State | 1 Yes  8 Unknown 2 No | 1 Yes  8 Unknown 2 No | 1 Yes  8 Unknown 2 No |

**NARRATIVE CONTINUATION**

**METRO-DADE POLICE DEPARTMENT**

| Date of Supplement | 1 0 2 3 9 7 | Agency Report Number | 4 5 7 5 8 5 T |
|---|---|---|---|
| Original Date Reported | 0 9 1 2 9 7 | Original Primary Offense Description | Sexual Battery | Original NCIC/UCR Code | 110A |

Victim #1 Name

Gang Related | Juvenile in Report | 1. Original 2. Supplement

Original Primary Offense Description | Sexual Battery
Primary Offense Changed To | A-Attempted C-Committed | New Statute Violation Number | New NCIC/UCR Code

stated the subject then picked her up and slammed her onto the floor of the bathroom. The subject forcibly removed the victim's pants and panties. The victim stated that the subject then climbed on top of her and "He slept with me." The victim explained that the subject placed his penis into her vagina. The victim stated that she lay in a prone position during the assault on her back with her pants and panties down to her knees. The subject was directly on top of her when he inserted his penis into her vagina.

The victim stated she was unable to provide any details regarding the previous assaults. The victim could only remember the following information: The victim stated that she has also been assaulted by subject #1 in the supply room as well as the ▇▇▇ truck. She stated that the assaults on the ▇▇▇ truck occurred at various locations within Dade County, Florida. She stated the assaults would occur inside of the truck whereupon the subject would pick her up and slam her onto the seat of the ▇▇▇ truck. The subject would then forcibly remove her clothing and force penile/vaginal intercourse. The victim stated that it was not part of her job description to be on a ▇▇▇ truck with subject #1. She stated however that he would order her to accompany him on the ▇▇▇ truck or she would lose her job. She stated the subject would take her to isolated locations. In one instance the subject took her to an isolated location where he had a sofa covered by a bed sheet. She stated the subject forced her out of the ▇▇▇ truck and onto the sofa where she submitted to sexual intercourse. The victim stated that the subject has also forced her to perform fellatio on him. The victim stated that the incidents have occurred within the past year approximately five to six times.

| Suspect Code S - Suspect  A - Arrestee | Code # | Offense Indicator 1 #1   3 Both 2 #2 | Residence Type 1 City     3 Florida 2 County  4 Out of State | Citizenship | Drug Indication 1 Yes  8 Unknown 2 No | Alcohol Indication 1 Yes  8 Unknown 2 No |
|---|---|---|---|---|---|---|
| Drug Activity   S - Sell N  N/A      8 Buy P  Possess   T  Traffic | N  Smuggle D  Deliver E  Use | K  Dispense/ Distribute M  Manufacturer/ Producer/ Cultivate | Z  Other | Drug Type N  N/A A  Amphetamine | B  Barbiturate C  Cocaine E  Heroine | H  Hallucinogen M  Marijuana O  Opium Div | P  Paraphernalia/ Equipment S  Synthetic | U  Unknown Z  Other |

| Person(s) Reporting | | ID. Number(s)/Locator Code | Unit | Date |
|---|---|---|---|---|
| DETECTIVE L. VELKEN/rb | | 2635-SCB | 3322 | 10-23-97 |

| CLEARED | Clearance Type 1 Arrest   3 Unfounded 2 Exceptional 4 Open Pend. | 2 | A-Adult J-Juvenile | A | Date Cleared | 1 0 2 3 9 7 | Number Arrested 0 1 |

**NARRATIVE CONTINUATION**

## METRO-DADE POLICE DEPARTMENT

| Gang Related | | Juvenile In Report | 1 Original 2 Supplement | 2 |

| Date of Supplement | | Agency Report Number | |
| 1 0 2 3 9 7 | | 4 5 7 5 8 5 T | Original NCIC/UCR Code |

| Original Date Reported | Original Primary Offense Description | Victim #1 Name | |
| 0 9 1 2 9 7 | Sexual Battery | | 110A |
| Original Offense Location | Primary Offense Changed To | A-At C-Committed | New NCIC/UCR Code |

The victim stated that her working hours are 7:00 a.m. to 5:00 p.m. She stated that the incidents in which she was assaulted by subject #1 always occurred during lunch hour which is approximately 12:00 p.m. She stated the assaults committed upon her by subject #2 occurred at various times during the day and was unable to give any specific times.

The victim stated that she has known ▓▓▓▓▓ a co-worker, for approximately three to four years. She stated that ▓▓▓▓▓ accompanied her to the Human Resources Office when she made her complaint to PAMELA PAYNE. She stated that ▓▓▓▓▓ overheard her allegations to PAMELA PAYNE. At approximately 3:55 p.m. my interview with the victim was concluded.

At approximately 4:00 p.m. I met with the victim's co-worker, ▓▓▓▓▓ in victim/witness room #2. After a brief introduction, ▓▓▓▓▓ provided me with background data. ▓▓▓▓▓ stated that she has been employed as a temporary ▓▓▓▓▓ with Dade County Department of ▓▓▓▓▓ since March of 1994. She stated that her duties are to accompany the ▓▓▓▓▓ truck to various sites where ▓▓▓▓▓ was collected. She also accompanies the crane operator to various sites where ▓▓▓▓▓ are collected.

▓▓▓▓▓ stated she first learned of the victim's allegations during a meeting they had on 8/25/97 with the Manager of Human Resources, PAMELA PAYNE. ▓▓▓▓▓ stated she was unsure of what the victim's allegations were but stated that they involved subject #1 and subject #2 making her promises of permanent employment for sex. ▓▓▓▓▓ stated that she has never witnessed any of the incidents involving the victim. She stated however that subject #1

| Suspect Code | | Code # | Offense Indicator | Residence Type | | Citizenship | Drug Indication | Alcohol Indication |
| S - Suspect  A - Arrestee | | | 1 #1  3 Both | 1 City  3 Florida | | | 1 Yes  8 Unknown | 1 Yes  8 Unknown |
| | | | 2 #2 | 2 County 4 Out of State | | | 2 No | 2 No |

| Drug Activity  S Sell | R Smuggle | K Dispense/ | M Manufacture/ | Z Other | Drug Type | B Barbiturate | H Hallucinogen | P Paraphernalia | U Unknown |
| N N/A  B Buy | D Deliver | Distribute | Produce/ | | N N/A | C Cocaine | M Marijuana | S Equipment | Z Other |
| P Possess  T Traffic | E Use | | Cultivate | | A Amphetamine | E Heroin | O Opium/Der | S Synthetic | |

| D 1 Parent | Name of Parent or Custodian (Last, First, Middle) | | | Residence Phone |
| D 2 Legal Custodian | | | | |
| D 3 Other | | | | |
| Address (Street, Apt. Number) | | (City) | (State) | (Zip) | Business Phone |
| Notified By: (Name) | | Date | Time | Juvenile Disposition 1 Handled/Processed Within    2 Turned Over to HRS/CYF Dept. and Released    3 Incarcerated (County Jail) | |
| Released to: (Name) | | Relationship | | Date | Time |

| Person/Unit Notified | Time | Related Report Number(s) | | |

| Officer(s) Reporting | | ID. Number(s)/Location Code | Unit | Date |
| DETECTIVE L. VELKEN/rb | | 2635-SCB | 3322 | 10-23-97 |
| Officer Reviewing (If Applicable) | ID. Number | Routed To | Referred To | Assigned To | By | Date |

| Case Status | Clearance Type | 3. Unfounded | A Adult | Date Cleared | Jail Number | Number Arrested |
| CLEARED | 1 Arrest  2 Exceptional | 4. Open Pend | J Juvenile | | | 0 1 |
| | 2 | A | 10 2 3 9 7 | | | |
| Exception Type    1 Element of Crime    2 Arrest on Primary    3 Death of Offender    4 Extradition Declined    5 Prosecution Declined | | | | OBTS Number | | Page |

**NARRATIVE CONTINUATION**

**METRO-DADE POLICE DEPARTMENT**

| Gang Released | | Juvenile In Report | 1 Original 2. Supplement |
| --- | --- | --- | --- |
| Date of Supplement 1, 0, 2, 3, 9, 7 | | | 2 |
| Original Date Reported 0 9 1 2 9 7 | Original Primary Offense Description Sexual Battery | Agency Report Number 4, 5, 7, 5, 8, 5, T | Original NCIC/UCR Code 110A |
| Original OFF/INC Location | Primary Offense Changed To | A-Attempted C-Committed | New NCIC/UCR Code |

and subject #2 have been overheard bragging about how the victim has been "giving it up." ▇▇▇▇▇ could not provide the names of others who may have overheard the subjects' statements.

▇▇▇▇▇ stated that in the past she has been approached by subject #1 who has told her, "I like to suck on them big old titties you got." She stated subject #1 has also promised her a permanent position for sex MS. ▇ stated that she has told subject #1 that "She don't play that" and has refused his advances. ▇▇▇▇▇ further stated that she has been told by the Chief of Division DAVID WHITE that temporary workers do not have any rights. ▇▇▇ stated tht she was assaulted by subject #1 at her residence. ▇▇▇ resides within the City of Miami Police Department's jurisdiction and stated that she was filing a report against him. ▇▇▇▇▇ could not provide any further information. At approximately 4:20 p.m., my interview with ▇▇▇▇ was concluded.

At approximately 4:35 p.m., a formal statement from the victim was recorded and transcribed by ROBIN BENJAMIN, Steno-Reporter, Sexual Crimes Bureau. A copy of the statement was made a part of the case file.

At approximately 5:14 p.m., a formal statement from ▇▇▇▇▇ was recorded and transcribed by MINERVE LLALA, Steno-Reporter, Sexual Crimes Bureau. A copy of the statement was made a part of the case file.

On 9/18/97 at approximately 11:00 a.m., I telephonically contacted the Chief of Human Resources for Dade County Department of ▇▇▇▇ Management, YVETTE

| Suspect Code S - Suspect  A - Arrestee | | Code s | Offense Indicator 1 at   3 Both 2 42 | Residence Type 1 City    3 Florida 2 County 4 Out of State | Citizenship | Drug Indication 1 Yes  8 Unknown 2 No | Alcohol Indication 1 Yes  8 Unknown 2 No |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Drug Activity N N/A P Possess | S Sell B Buy T Traffic | H Smuggle D Deliver U Use | K Dispense/ Distribute | M Manufacture/ Producer/ Cultivate | Drug Type N N/A A Amphetamine | B Barbiturate C Cocaine E Heroine | H Hallucinogen M Marijuana O Opium/Drv | P Paraphernalia/ Equipment S Synthetic | U Unknown Z Other |
| | | Name of Parent or Custodian (Last, First, Middle) | | | | | Residence Phone ( ) |
| Address (Street, Apt. Number) | | | | (City) | (State) | (Zip) | Business Phone ( ) |
| Notified By: (Name) | | | | Date | Time | Juvenile Disposition 1 Handled/Processed Within Dept. and Released | 2 Turned Over to HRS/CYF 3 Incarcerated (County Jail) |
| Released to: (Name) | | | | | Relationship | | Date | Time |
| Person/Unit Notified | | | Time | | Related Report Number(s) | | |

| Officer(s) Reporting DETECTIVE L. VELKEN/rb | | | | ID. Number(s)/Locator Code 2635-SCB | Unit 3322 | Date 10-23-97 |
| --- | --- | --- | --- | --- | --- | --- |
| Officer Reviewing (If Applicable) | ID. Number | Routed To | | Referred To | Assigned To | By | Date |
| Case Status CLEARED | Clearance Type 1 Arrest 2 Exceptional | 3 Unfounded 4 Open Pend. | 2 | A Adult J-Juvenile A | Date Cleared 10, 2, 3, 9, 7 | Jail Number | Number Arrested 0 1 |

**NARRATIVE CONTINUATION**

**METRO-DADE POLICE DEPARTMENT**

| | | |
|---|---|---|
| Date of Supplement 1 0 2 3 9 7 | Original Primary Offense Description **Sexual Battery** | Agency Report Number 4 5 7 5 8 5 T J |
| Original Date Reported 0 9 1 2 9 7 | Primary Offense Changed To | Original NCIC/UCR Code 110A |

COLBOURNE. Arrangements were made with MS. COLBOURNE to meet with PAMELA
PAYNE, Human Resources Manager and DAVID WHITE, Chief of ▮▮▮ Division. MS.
COLBOURNE advised that she would also make arrangements for me to meet with the
crew members who worked with the victim, as well as the subjects at a later
date.

At 12:21 p.m., SERGEANT LOPEZ and I responded to the Metro Dade County
Department ▮▮▮ Management, Human Resources Division, located at ▮▮▮
▮▮▮ Miami, Fla. 33166. Phone: ▮▮▮ After a brief
introduction we met with Human Resources Manager, PAMELA PAYNE in the
conference room. MS. PAYNE stated she first learned of the incident on 8/25/97
at approximately 8:50 a.m. She stated that the victim responded to her office
accompanied by ▮▮▮ and BERTHA GOMEZ. She stated they were agitated
and were complaining about not being allowed to work on that particular day.
They also complained about other temporaries getting permanent positions with
less time on the Department than they have. They further stated that
supervisors were giving preferential treatment to relatives who were employed
under them. She stated these were the main complaints of BERTHA GOMEZ and
▮▮▮ She stated the victim's main complaint was that she had been
employed as a temp for approximately five years and still had not attained a
permanent position.

MS. PAYNE stated that during her meeting with them, ▮▮▮ turned toward
the victim and advised her to disclose that she had been having sex with men
on the Department who had promised her a permanent position. MS. PAYNE stated
she asked the victim to explain. She stated that ▮▮▮ made a motion to

| | |
|---|---|
| Officer(s) Reporting **DETECTIVE T. VELKEN/rb** | ID. Number(s)/Locator Code 2635-SCB   Unit 3322   Date 10-23-97 |
| Officer Reviewing (If Applicable) | |

| Case Status **CLEARED** | Clearance Type 1 Arrest 3 Unfounded 2 Exceptional 4 Open Pend  2 | A-Adult J-Juvenile A | Date Cleared 10 23 97 |

**NARRATIVE CONTINUATION**

| | Gang Related | METRO-DADE POLICE DEPARTMENT | Agency Report Number 4, 5, 7, 5, 8, 5, T | Juvenile In Report | 1 Original 2. Supplement |
|---|---|---|---|---|---|
| Date of Supplement 1, 0, 2, 3, 9, 7 | | | | | |
| Original Date Reported 0 9 12 97 | Original Primary Offense Description Sexual Battery | Victim #1 Name ▓▓▓▓ | | Original NCIC/UCR Code 110A | |
| Original OFF/INC Location | Primary Offense Changed To | A. ▓▓▓ C. Committed | | New NCIC/UCR Code | |

the victim with her hand moving back and forth in front of her mouth with her mouth open, implying oral sex. MS. PAYNE stated she again asked the victim to explain, but the victim refused, and stated only that she had been employed for a long time without a permanent job. She stated ▓▓▓▓ and MS. GOMEZ became frustrated attempting to prompt a disclosure from the victim and therefore told the victim, "You must like it if you don't say anything about it."

MS. PAYNE stated she and DAVID WHITE, Chief ▓▓▓▓ Division later met alone with the victim. The victim disclosed to them that the subjects had promised her a permanent position for sexual favors. MS. PAYNE stated that since she was having trouble communicating with the Creole speaking victim, she decided to reschedule another meeting in which a Creole speaking interpreter could attend. She stated that a meeting with the victim was scheduled for 8/29/97 at 9:30 a.m.

MS. PAYNE stated that on 8/29/97 at 9:30 a.m., the victim responded to her office. She stated the victim was accompanied by an attorney she had retained by the name of PATRICIA ELLIS. MS. PAYNE stated that she advised the victim's attorney MS. ELLIS that the meeting would have to be rescheduled so that a County Attorney could be present and there could be equal representation.

MS. PAYNE stated that on 9/8/97 at 10:00 a.m. another meeting was arranged with the victim and her attorney PATRICIA ELLIS. The meeting was held at the Steven P. Clark Building located 111 N.W. 1st St. Present during the meeting were Metro Dade County Attorney, WILLIAM CANDELA, JUAN D. DE-ONA, from the Office

| Officer(s) Reporting DETECTIVE L. VELKEN/rb | ID. Number(s)/Locator Code 2635-SCB | Unit 3322 | Date 10-23-97 |
|---|---|---|---|
| Classification CLEARED | Clearance Type 1 Arrest 3 Unfounded 4. Open Pend. | 2 | A | Date Cleared 10, 2, 3, 9, 7 | Jail Number | Number Arrested 0 1 |

**NARRATIVE CONTINUATION**

**METRO-DADE POLICE DEPARTMENT**

| Date of Supplement | Agency Report Number | Original | Supplement |
|---|---|---|---|
| 1, 0, 2, 3, 9, 7 | 4, 5, 7, 5, 8, 5, T | | 2 |

| Original Date Reported | Original Primary Offense Description | Victim #1 Name | Original NCIC/UCR Code |
|---|---|---|---|
| 0  9 1 2 9 7 | Sexual Battery | | 110A |

| Original OFF/INC Location | Primary Offense Changed To | A-Attempted C-Committed | New Statute Violation Number(s) | New NCIC/UCR Code |
|---|---|---|---|---|

of Fair Employment Practices, JACQUELYN DALENCOUR, Creole speaking interpreter and herself.  During the meeting she stated the victim made allegations against the subjects of sexual harassment as well as the promise of a permanent position for having sexual intercourse with them.  MS. PAYNE stated that initially the victim stated the subjects used threats of the victim's dismissal in order to get her to submit to sexual acts.  The victim made no mention of force being used by the subjects.  MS. PAYNE stated that the victim while speaking of the incidents, became upset and was allowed a break in the meeting to confer with her attorney and the Creole speaking interpreter.  MS. PAYNE stated that she, JUAN DE-ONA, and WILLIAM CANDELA exited the room.

MS. PAYNE stated that upon her return with JUAN DE-ONA they continued to interview the victim concerning her allegations.  She stated that at that point the victim began to allege that the subjects had also forced her to engage in sexual acts by using physical force.

MS. PAYNE stated that on 9/9/97 at approximately 9:30 a.m., she and JUAN DE-ONA met with the victim's crew members in an attempt to gain more information concerning the victim's allegations.  She stated they met with crew member MELVIN NELSON, who stated he had no knowledge of the incidents.  They met with crew member CLEM HAMILTON, who also stated that he had no knowledge of the incidents. MS. PAYNE stated she and MR. DE-ONA attempted to meet with crew member ▮▮▮▮▮ but because of a toothache she advised them that she was unable to speak.  MS. PAYNE stated that therefore a meeting with ▮▮▮▮ was rescheduled for another date.  MS. PAYNE stated they then met with subject #2, who admitted that approximately four to five years ago he had sexual

| Officer(s) Reporting | ID. Number(s)/Locator Code | Unit | Date |
|---|---|---|---|
| DETECTIVE L. VELKEN/rb | 2635-SCB | 3322 | 10-23-97 |

| Case Status | Clearance Type | Date Cleared | Jail Number | Number Arrested |
|---|---|---|---|---|
| CLEARED | 2 | A | 10, 2, 3, 9, 7 | 0 1 |

**NARRATIVE CONTINUATION**

| Gang Related | | | | | Juvenile in Report | 1 Original 2 Supplement | | 2 |
|---|---|---|---|---|---|---|---|---|

| Date of Supplement | **METRO-DADE POLICE DEPARTMENT** | | Agency Report Number | |
|---|---|---|---|---|
| 1, 0, 2, 3, 9, 7 | | | 4, 5, 7, 5, 8, 5, T, | |
| Original Date Reported | Original Primary Offense Description | Victim #1 Name | | Original NCIC/UCR Code |
| 0  9 1 2 9 7 | Sexual Battery | | | 110A |
| Original Off/INC Location | Primary Offense Changed To | A-Attempted C-Committed | New Statute Violation Number | New NCIC/UCR Code |

intercourse with the victim while on a date with her off-duty.  Subject #2 stated they had consensual sex once and that it did not occur on duty.  MS. PAYNE and MR. DE-ONA then met with subject #1 who denied ever having any sexual contact with the victim.

MS. PAYNE stated that the victim advised her that a co-worker by the name of DENISE ALABRE had knowledge of subject #1's relationship with her.

On 9/12/97 MS. PAYNE stated she met with the victim's co-worker, DENISE ALABRE. MS. ALABRE advised her that the victim had told her a couple of months ago that subject #1 had forced her to have sex with her.  MS. ALABRE however stated that she never witnessed any incidents and that she had no further knowledge concerning the incidents.

MS. PAYNE stated she later attempted to meet with ▮▮▮▮▮▮ whose earlier meeting had been rescheduled.  MS. PAYNE stated however that ▮▮▮▮▮ responded to her office accompanied by the victim's attorney, PATRICIA ELLIS. PATRICIA ELLIS advised her that she was representing ▮▮▮▮▮ in a sexual harassment lawsuit against The Dade County Department ▮▮▮▮▮▮ Management.  MS. ELLIS further stated that ▮▮▮▮▮ could not be interviewed because she would not serve as a witness for the victim.

MS. PAYNE stated that she has conducted background investigations of the subjects.  She stated that there have been no prior sexual harassment complaints made against them.  At approximately 1:20 p.m., our interview with MS. PAYNE was concluded.

| Suspect Code S - Suspect  A - Arrestee | | Code # | Offense Indicator 1 #1   3 Both 2 #2 | Residence Type 1 City   3 Florida 2 County 4 Out of State | | Citizenship | Drug Indication 1 Yes  8 Unknown 2 No | Alcohol Indication 1 Yes  8 Unknown 2 No |
|---|---|---|---|---|---|---|---|---|
| Drug Activity   S Sell N N/A   B Buy P Possess   T Traffic | R Smuggle D Deliver E Use | K Dispense/ Distribute | M Manufacture/ Producer/ Cultivate | Drug Type N N/A A Amphetamine | B Barbiturate C Cocaine E Heroine | H Hallucinogen M Marijuana O Opium/Dis | P Paraphernalia/ Equipment S Synthetic | U Unknown Z Other |

| JUVENILE SUSPECT | D 1 Parent D 2 Legal Custodian D 3 Other | Name of Parent or Custodian (Last, First, Middle) | | | | Residence Phone ( ) |
|---|---|---|---|---|---|---|
| | Address (Street, Apt. Number, | | (City) | (State) | (Zip) | Business Phone ( ) |
| | Notified By: (Name) | | Date | Time | Juvenile Disposition 1 Handled/Processed Within Dept. and Released | 2 Turned Over to HRS/CYF 3 Incarcerated (County Jail) |
| | Released to: (Name) | | | Relationship | | Date | Time |

| Person/Unit Notified | Time | Related Report Number(s) |
|---|---|---|
| | | |

| ADMINISTRATIVE | Officer(s) Reporting DETECTIVE L. VELKEN/rb | ID. Number(s)/Locator Code 2635-SCB | Unit 3322 | Date 10-23-97 |
|---|---|---|---|---|
| | Officer Reviewing (if Applicable) | ID. Number | Routed To | Referred To | By | Assigned To |
| | CLEARED | Clearance Type 1 Arrest   3 Unfounded 2 Exceptional 4 Open Pend. | 2 | A-Adult J-Juvenile A | Date Cleared 1 0 2 3 9 7 | Jail Number | Number Arrested 0 1 |
| | Exception Type | 2 Arrest on Primary | | 3 Death of Offender | 5 Prosecution Declined | OBTS Number | Page of |

**NARRATIVE CONTINUATION**

2

| Gang Related | | | | Juvenile In Report | 1. Original 2. Supplement |

| Date of Supplement | | METRO-DADE POLICE DEPARTMENT | Agency Report Number | Original NCIC/UCR Code |
| 1 , 0 , 2 , 3 , 9 , 7 | | | 4, 5, 7, 5, 8, 5, T | |
| Original Date Reported | Original Primary Offense Description | Victim #1 Name | | Original NCIC/UCR Code |
| 0  9  1  2  9  7 | Sexual Battery | | | 110A |
| Original OFF/INC Location | Primary Offense Changed To | A-Attempted C-Committed | | New NCIC/UCR Code |

At approximately 1:30 p.m., SERGEANT LOPEZ and I met with the Chief

Division, DAVID WHITE in the conference room. MR. WHITE stated that he first

learned of the victim's allegations on 8/25/97 when he and MS. PAYNE spoke with

her. He stated that at that time the victim complained of not being allowed

to work on that particular day, as well as the fact that she was still a

temporary employee after so many years. He stated the victim also alleged that

she had engaged in sexual intercourse with the subjects for the promise of a

permanent position.

MR. WHITE said that he has never had any problems with the subjects in the

past. He stated that he was not aware of the incidents until the victim's

disclosure. MR. WHITE was unable to provide any further information concerning

the incidents. At approximately 1:43 p.m., our interview with MR. WHITE was

concluded.

On 9/26/97 at approximately 12:30 p.m., SGT. LOPEZ and I responded to 111 N.W.

1st St., Suite #2720, the Dade County Office of Fair Employment Practices.

After a brief introduction, we met with Fair Employment Practices Specialist,

JUAN DE-ONA in the conference room. MR. DE-ONA stated that he first learned

of the victim's allegations through PAMELA PAYNE, personnel specialist with

Dade County ▓▓▓▓▓▓ MS. PAYNE telephoned him on 8/25/97 and requested

that a meeting be held with the victim on 8/29/97 regarding her allegations.

MR. DE-ONA stated that he responded to that meeting on 8/29/97 but learned

before the meeting that the victim had retained attorney PATRICIA ELLIS.

Because it is necessary for the County to have equal representation during

| Officer(s) Reporting | ID. Number(s)/Locator Code | Unit | Date |
| DETECTIVE L. VELKEN/rb | 2635-SCB | 3322 | 10-23-97 |

| Case Status | Clearance Type | A-Adult | Date Cleared | Number Arrested |
| CLEARED | 3. Unfounded  4. Open Pend | 2 | A | 1 0 , 2 , 3 , 9 , 7 | 0  1 |

**NARRATIVE CONTINUATION**

**METRO-DADE POLICE DEPARTMENT**

| Date of Supplement | Gang Related | | | | | Juvenile In Report | 1. Original 2. Supplement |
|---|---|---|---|---|---|---|---|

Date of Supplement: 1 0 2 3 9 7   Agency Report Number: 4 5 7 5 8 5 T

Original Date Reported: 0 9 1 2 9 7

Original Primary Offense Description: **Sexual Battery**

Victim #1 Name: ▆▆▆▆

Original NCIC/UCR Code: 110A

Original OFF/INC Location:

Primary Offense Changed To:

New NCIC/UCR Code:

these meetings, it was rescheduled for 9/8/97 at the Steven P. Clark Building located at 111 N.W. 1st St.

MR. DE-ONA stated that on 9/8/97 the meeting was held at approximately 10:00 a.m.   Present were JUAN DE-ONA, PAMELA PAYNE, County Attorney, BILL CANDELA, County Interpreter, JACQUELYN DELACOUIR, the victim and her attorney PATRICIA ELLIS.  The meeting was held in the conference room.  The victim disclosed that since the beginning of her employment with Dade County Department ▆▆▆▆ as a temporary, she was promised a permanent position by the subjects in exchange for sex.  Subject #2 told the victim that he would submit the victim's name as a good employee in exchange for sex.  Subject #1 also advised the victim that he would submit her name for a permanent position in exchange for sex.  The victim was later advised by subject #1 that he had no control over who was hired.

The victim stated that she had engaged in sex with the subjects on numerous occasions.  She stated that it was as often as three times a week.  The victim stated this occurred up until August of 1997.  The victim stated the locations were various, including in a truck and a bathroom.  The victim was asked during the meeting why she was disclosing this now after four years.  The victim became uncomfortable with the questioning and was given a brief recess.

During the recess MR. DE-ONA, PAMELA PAYNE and County Attorney BILL CANDELA exited the conference room.  The victim remained with her attorney as well as the County interpreter.

Officer(s) Reporting: **DETECTIVE L. VELKEN**/rb   ID. Number(s)/Locator Code: 2635-SCB   Unit: 3322   Date: 10-23-97

CLEARED   Clearance Type 3. Unfounded: 2   A. Adult J. Juvenile: A   Date Cleared: 1 0 2 3 9 7   Number Arrested: 0 1

**NARRATIVE CONTINUATION**

| Gang Related | | | | | | | Juvenile in Report | 1 Original 2. Supplement | 2 |
|---|---|---|---|---|---|---|---|---|---|

| Date of Supplement 1, 0, 2, 3, 9, 7 | METRO-DADE POLICE DEPARTMENT | | Agency Report Number 4, 5, 7, 5, 8, 5, T | |
|---|---|---|---|---|
| Original Date Reported 0 9 1 2 9 7 | Original Primary Offense Description Sexual Battery | Victim #1 Name ▬▬▬▬ | Original NCIC/UCR Code 110A | |
| Original OFF/INC Location | Primary Offense Changed To | A-Attempted C-Committed | New Remote Victim(s) Number(s) | New NCIC/UCR Code |

After the recess the meeting was resumed without BILL CANDELA, the County Attorney. After the recess the victim added that the instances in which she engaged in sex with the subjects were also forced. MR. DE-ONA stated that he recalled the victim stating that on one occasion she told subject #1 that she did not want to have sex in the truck because they might be seen.

The victim was asked by MR. DE-ONA if there were any witnesses to these offenses. The victim indicated that there were not. However the victim's attorney at this point stated that the victim had names of hearsay witnesses which were fellow co-workers. The names given by the victim were: BERTHA GOMEZ, DENISE ALABRE, MELVIN NELSON, and CLEM HAMILTON. MR. DE-ONA stated he attempted to ascertain from the victim at which point in her relationship with the subjects the sex became forced. The victim was unable to answer. The meeting was terminated shortly thereafter. MR. DE-ONA advised me that the meeting was taped. MR. DE-ONA provided me with two micro cassettes of the meeting. MR. DE-ONA was provided with a property receipt for the tapes.

The tapes obtained from MR. DE-ONA were transcribed by MINERVE LALLA, Steno-Reporter, Sexual Crimes Bureau. The tapes confirm MR. DE-ONA's assertion that the victim did not indicate physical force until after the recess in which she had an opportunity to consult with her attorney PATRICIA ELLIS.

MR. DE-ONA stated that later he and PAMELA PAYNE conducted interviews of the victim's fellow crew members. He stated that MELVIN NELSON and CLEM HAMILTON had no knowledge of the incidents. DENISE ALABRE stated that the victim had told her she had been forced to have sex with the subjects approximately two

| Officer(s) Reporting DETECTIVE L. VELKEN/rb | ID. Number(s)/Locator Code 2635-SCB | Unit 3322 | Date 10-23-97 |
|---|---|---|---|

| Code Status CLEARED | Clearance Type 1 Arrest 2 Exceptional | 3. Unfounded 4. Open-Pend. | 2 | A-Adult J-Juvenile | A | Date Cleared 10, 2, 3, 9, 7 | | Jail Number | | Number Arrested 0 1 |

**NARRATIVE CONTINUATION**

| Gang Related | | Juvenile In Report | Original 1. Original 2. Supplement | 2 |

| Date of Supplement | **METRO-DADE POLICE DEPARTMENT** | Agency Report Number | |
|---|---|---|---|
| 1 , 0 , 2 , 3 , 9 , 7 | | 4 , 5 , 7 , 5 , 8 , 5 , T | |
| Original Date Reported | Original Primary Offense Description | Victim #1 Name | Original NCIC/UCR Code |
| 0 , 9 , 1 , 2 , 9 , 7 | Sexual Battery | | 110A |
| Original OFF/INC Location | Primary Offense Changed To | A-Attempted C-Committed | New Status Violation Number | New NCIC/UCR Code |

months ago.  MR. DE-ONA also indicated that those meetings with the fellow crew
members were taped.  I requested the original tapes from MR. DE-ONA.  MR. DE-
ONA advised me that at the present time the tapes were in storage and that he
would telephone me at a later date so that I could obtain the tapes.  I further
advised MR. DE-ONA that once he had completed a report of his involvement in
the investigation that he provide me with a copy, so that it could be made a
part of the case file.  MR. DE-ONA agreed.


At approximately 4:00 p.m., I responded to the Dade County Department ████
████ site located at ██████████████  After a brief introduction I met with
one of the victim's co-workers BERTHA GOMEZ B/F 38, DOB: 8/31/59 in the
conference room.  Personal background data was obtained.  MS. GOMEZ resides at
15401 N.E. 6th Ave., #B-116, Miami, Florida 33169.  Home phone: 956-9658.  Work
phone: ██████████  MS. GOMEZ stated she is employed temporarily as a day laborer
with Dade County Department ██████████.  She stated she has been employed
with the County for approximately two years.  MS. GOMEZ stated that she has
known the victim and subjects since the beginning of her employment with the
County.  She stated she has known subject #1 since 1986 while working at a
different job.  She stated that her relationship with the victim as well as the
subject was strictly professional and has never had any personal conversations
with any of them.  MS. GOMEZ stated however that she has heard rumors that the
victim has engaged in sex with the subjects.  MS. GOMEZ was unable to say whom
she heard the rumors from.  She stated that the rumors involved the victim
having both oral sex and penile/vaginal intercourse with the subjects.  She
stated she has never witnessed any of these acts.  She stated that she has
never had any problems during her working relationship with the subjects, nor

| Suspect Code S - Suspect  A - Arrestee | Code # | Offense Indicator 1 #1  3 Both 2 #2 | Residence Type 1 City  3 Florida 2 County 4 Out of State | Citizenship | Drug Indication 1 Yes  8 Unknown 2 No | Alcohol Indication 1 Yes  8 Unknown 2 No |
|---|---|---|---|---|---|---|
| Drug Activity  1 Sell  N N/A  B Buy  P Possess  T Traffic | H Smuggle D Deliver E Use | K Dispense/ Distribute | M Manufacture/ Producer/ Cultivate | Drug Type N N/A A Amphetamine | B Barbiturate C Cocaine E Heroine | H Hallucinogen M Marijuana O Opium/Dir | P Paraphernalia S Synthetic | U Unknown / Other |

| Person/Unit Notified | Time | Related Report Number(s) | | | |
|---|---|---|---|---|---|
| Officer(s) Reporting DETECTIVE L. VELKEN/rb | ID. Number(s)/Locator Code 2635-SCB | Unit 3322 | Date 10-23-97 | | |
| Case Status CLEARED | Clearance Type  3. Unfounded  1 Arrest  4. Open Pend.  2 Exceptional  2 | A: Adult  J: Juvenile  A | Date Cleared 1 0 , 2 , 3 , 9 , 7 | Job Number | Number Arrested 0  1 |

**NARRATIVE CONTINUATION**

**METRO-DADE POLICE DEPARTMENT**

| Date of Supplement | Gang Related | | | Juvenile | Original / Supplement |
|---|---|---|---|---|---|
| 1, 0, 2, 3, 9, 7 | | | Agency Report Number 4, 5, 7, 5, 8, 5, T | | 2 |

| Original Date Reported | Original Primary Offense Description | Victim #1 Name | Original NCIC/UCR Code |
|---|---|---|---|
| 0 9 1 2 9 7 | Sexual Battery | | 110A |

the victim. She stated that in her opinion the victim "gave it up" referring to sex, with the subjects, believing that it would lead to a permanent position. MS. GOMEZ provided no further information concerning the incidents. At approximately 4:20 p.m. my interview with MS. GOMEZ was concluded.

At approximately 4:25 p.m. I conducted an interview of another co-worker, MELVIN NELSON B/M 29, DOB: 10/21/67 in the conference room. Personal background data was obtained. MR. NELSON resides at 2496 N.W. 44th St., Miami, Florida 33142. Home phone: 633-3973. Work phone: ▮▮▮▮▮ MR. NELSON stated that he has been employed as a permanent employee with Dade County Department ▮▮▮▮▮ for approximately eleven years. He stated he presently holds the title of Waste Attendant.

MR. NELSON stated that he has known the subjects since the beginning of his employment, approximately eleven years. He stated he has known the victim since the beginning of her employment with the County, approximately five years ago. He stated that he does not have any personal knowledge regarding the victim's allegations. He stated however he has heard rumors about the victim and subject #2 having an affair. MR. NELSON stated that he was unable to recall who he heard that from. MR. NELSON stated that he has a good working relationship with all parties involved. MR. NELSON could not provide any further information. At approximately 4:40 p.m. my interview with MR. NELSON was concluded.

On 9/27/97 at approximately 1:00 p.m., DET. RUANO, Badge #2137 and I responded to the victim's residence. We met with her boyfriend ▮▮▮▮▮ B/M 30,

| Officer(s) Reporting | ID. Number(s)/Locator Code | Unit | Date |
|---|---|---|---|
| DETECTIVE D. VELKEN/rb | 2635-SCB | 3322 | 10-23-97 |

| Case Status | Clearance Type | | Adult/Juvenile | Date Cleared | Job Number | Number Arrested |
|---|---|---|---|---|---|---|
| CLEARED | 1 Arrest 2 Exceptional | 3 Unfounded 4 Open Pend | 2 | A | 10, 2, 3, 9, 7 | | 0 1 |

32.02 09-2

## NARRATIVE CONTINUATION

2

### METRO-DADE POLICE DEPARTMENT

| Date of Supplement | | Gang Related | | | | | Agency Report Number | | Juvenile in Report | 1 Original 2. Supplement |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 0, 2, 3, 9, 7 | | | | | | | 4 5 7 5 8 5 T | | | |
| Original Date Reported | | Original Primary Offense Description | | | Victim's Name | | | | | Original NCIC/UCR Code |
| 0 9 1 2 9 7 | | Sexual Battery | | | | | | | | 110A |
| Original OFF/INC Location | | Primary Offense Changed To | | | A. Attempted C- Comaitted | New Statute Violations Number | | | | New NCIC/UCR Code |

DOB: ▓▓▓▓ in the living room of the residence. Personal background data was obtained. ▓▓▓▓▓ is employed as a construction worker for Charles Construction located at 13820 S.W. 28th St., Miami, Fla.

▓▓▓▓▓ stated that he has been residing with the victim for approximately four to five years. He stated that during the time she has been employed as a temporary with the Metro Dade Department ▓▓▓▓▓ on various occasions the victim has cried about work. He stated that the victim would never explain why she was crying about her work ▓▓▓▓▓ stated that he always assumed that the victim was lazy and did not wish to go to work. He stated he did not learn that the victim had been assaulted at work until recently approximately two to three weeks ago. ▓▓▓▓▓ stated he was angry at the victim for not confiding in him what has occurred to her at work. He stated that even now the victim refuses to be specific as to what happened at work. The victim only says that they forced her to have sex. ▓▓▓▓▓ further stated that he does not know whether or not to believe the victim's allegations. He stated that he is unsure if he is going to continue to live with her at this time. ▓▓▓▓▓ provided no further information regarding the victim's allegations. At approximately 1:25 p.m., our interview with ▓▓▓▓▓ was concluded.

On 10/2/97 at approximately 12:52 p.m. I responded to the Metro Dade ▓▓▓▓ ▓▓▓▓ located at ▓▓▓▓▓. I was accompanied by Creole speaking interpreter MINERVE LLALA. After a brief introduction I met with the victim's co-worker DENISE ALABRE B/F 33, DOB: 5/2/64. Personal background data was obtained. D. ALABRE resides at 13300 N.E. 6th Ave., #204, Miami, Fla. 33162. Home phone: 892-9921. D. ALABRE has been employed by The Dade County

| Suspect Code S - Suspect  A - Arrestee | | Code # | Offense Indicator 1 Yes   3 Both 2 No | Residence Type 1 City   3 Florida 2 County  4 Out of State | | Citizenship | | Drug Indication 1 Yes  8 Unknown 2 No | | Alcohol Indication 1 Yes  8 Unknown 2 No | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Drug Activity   S Sell N N/A   B Buy P Possess  T Traffic | D Deliver E Use | K Smuggle K Dispense/ Distribute | M Manufacture/ Produce/ Cultivate | Z Other | Drug Type N N/A A Amphetamine | B Barbiturate C Cocaine E Heroine | H Hallucinogen M Marijuana O Opium/Dvr | P Paraphernalia/ Equipment S Synthetic | U Unknown Z Other | | |
| Q 1 Parent O 2 Legal Custodian Q 3 Other | | | Name of Parent or Custodian (Last, First, Middle) | | | | | | | | Residence Phone |
| | | Address (Street, Apt. Number) | | | (City) | | (State) | (Zip) | | Business Phone | |
| | | Notified By: (Name) | | | | Date | Time | Juvenile Disposition 1 Handled/Processed Within Dept. and Released | 2 Turned Over to HRS/CYF 3 Incarcerated (County Jail) | | |
| | | Released to: (Name) | | | | | Relationship | | Date | Time | |
| Person/Unit Notified | | | | Time | | Related Report Number(s) | | | | | |
| Officer(s) Reporting DETECTIVE L. VELKEN/rb | | | | | | ID. Number(s)/Locator Code 2635-SCB | | Unit 3322 | | Date 10-23-97 | |
| Officer Reviewing (If Applicable) CLEARED | | ID. Number | Routed To | Clearance Type 1 Arrest 2 Exceptional | 3 Unfounded 4 Open Pend. 2 | Returned To A | Date Cleared 1 0 2 3 9 7 | Assigned To | Jail Number | By 0 | Date 1 |

**NARRATIVE CONTINUATION**

**METRO-DADE POLICE DEPARTMENT**

| Date of Supplement | Agency Report Number |
|---|---|
| 1 0 2 3 9 7 | 4 5 7 5 8 5 T |

| Original Date Reported | Original Offense Description | Victim #1 Name | Original NCIC/UCR Code |
|---|---|---|---|
| 0 9 1 2 9 7 | Sexual Battery | | 110A |

| Original OFF/INC Location | Primary Offense Changed To | | New NCIC/UCR Code |
|---|---|---|---|

Department ▓▓▓▓▓▓ for approximately five years. She has been employed as a ▓▓▓▓ Attendant I on a permanent basis for the past three years and prior to that was a temporary for two years.

D. ALABRE stated that she became acquainted with the victim and the subjects through her employment. She stated that she is only an acquaintance of the victim as well as the subjects. She stated that she has not had any conversation with the victim on a personal basis. She stated that her conversations with the victim as well as the subjects has always been on a professional level.

D. ALABRE stated that approximately three to five months ago she heard rumors about the victim and subject #1 dating. D. ALABRE was unable to provide the name of who she heard the rumors from. She stated that approximately two months ago subject #1 asked her to translate to the victim that he had submitted her name for a permanent position with Dade County. D. ALABRE further stated that approximately two to five months ago the victim approached her and told her that the subject had forced her to have sex. She stated the victim did not elaborate any further and she did not question the victim. D. ALABRE stated that she has no knowledge of the incident and has never witnessed any such acts. D. ALABRE stated that she has never had any problems with the subjects. She stated that on one occasion about five months ago, she observed the victim and subject #1 riding together in a County car. D. ALABRE was unable to provide any further information. At approximately 1:10 p.m. my interview was concluded.

| Officer(s) Reporting | ID. Number(s)/Locator Code | Unit | Date |
|---|---|---|---|
| DETECTIVE D. VELKEN/rb | 2635-SCB | 3322 | 10-23-97 |

| Case Status | Clearance Type | Adult | Date Cleared | Number Arrested |
|---|---|---|---|---|
| CLEARED | 2 | A | 10 2 3 9 7 | 0 1 |

**NARRATIVE CONTINUATION**

| Date of Supplement | Gang Related | | | | | Juvenile in Report | | 1 Original 2. Supplement | 2 |
|---|---|---|---|---|---|---|---|---|---|
| 1 0 2 3 9 7 | | **METRO-DADE POLICE DEPARTMENT** | | | Agency Report Number 4 5 7 5 8 5 T | | | | |
| Original Date Reported 0 9 1 2 9 7 | | Original Primary Offense Description Sexual Battery | Victim # | Name | | | | Original NCIC/UCR Code 110A | |
| Original OFF/INC Location | | Primary Offense Changed To | A-Attempted C-Committed | | New Statute Violation Number | | | New NCIC/UCR Code | |

At approximately 4:20 p.m. I responded to the Metro Dade Department ▓▓▓▓ ▓▓▓▓▓▓▓▓ site located at ▓▓▓▓▓▓▓. After a brief introduction I met with the victim's co-worker, CLEM HAMILTON B/M 38, DOB: 11/27/58. Personal background data was obtained. MR. HAMILTON resides at 19230 N.W. 19th Ave., Miami, Fla. 33056. Home phone: 620-7792. MR. HAMILTON stated he has been employed with the Metro Dade Department ▓▓▓▓▓▓▓▓▓ since October of 1987. He stated his job title is ▓▓▓▓ Truck Driver I.

MR. HAMILTON stated that he is familiar with the victim and the subjects through work. He stated that he has been working with the victim and the subjects since April of 1997. He stated that subject #1 is a supervisor. The victim and subject #2 are co-workers.

MR. HAMILTON stated that during the second or third week of August he heard numerous rumors about the victim filing a sexual harassment complaint against the subjects. MR. HAMILTON could not provide the name of the person he heard those rumors from. MR. HAMILTON stated that he does not have any contact with the victim other than on a professional level at work. He stated that his relationship with the subjects was likewise. MR. HAMILTON stated that he was advised by subject #2 in approximately May or June of 1997 that he had once gone out with the victim after work hours. MR. HAMILTON stated that on one occasion subject #2 invited him to accompany himself and the victim on a date after work. MR. HAMILTON stated however that he refused.

MR. HAMILTON stated that he has never witness any incidents involving the victim and the subjects. He stated that in early September of 1997 the victim

| Suspect Code S - Suspect A - Arrestee | Code # | Offense Indicator | Residence Status | Citizenship | Drug Indication | Alcohol Indication |
|---|---|---|---|---|---|---|
| | | 1 #1  J Both 2 #2 | 1 City   3 Florida 2 County 4 Out of State | | 1 Yes  8 Unknown 2 No | 1 Yes  8 Unknown 2 No |
| Drug Activity N  N/A | Code # | R Smuggle S Sell | M Manufacturer/ | Drug Type N  N/A | B Barbiturate | F Paraphernalia/ |
| S  Sell  B  Buy O  Deliver K  Dispense/ Producer/ C  Cocaine M  Marijuana Equipment | | | | | | |
| N  N/A  1  Traffic U  Use Distribute Cultivate A  Amphetamine E  Heroine D  Opium-Dro S  Synthetic | | | | | | |

| JUVENILE SUSPECT | |
|---|---|
| 1 Parent G-2 Legal Custodian L-3 Other | Name of Parent or Custodian (Last, First, Middle) | Residence Phone |
| | Address (Street, Apt. Number) | (City) | (State) | (Zip) | Business Phone |
| | Notified By: (Name) | Date | Time | Juvenile Disposition 1 Handled/Processed Within Dept. and Released | 2 Turned Over to HRS/CYF 3 Incarcerated (County Jail) |
| | Released to: (Name) | | Relationship | | Date | Time |

| ADMINISTRATIVE | | | | | | |
|---|---|---|---|---|---|---|
| Person/Unit Notified | | | Time | Related Report Number(s) | | |
| Officer(s) Reporting DETECTIVE I. VELKEN/rb | | | | ID. Number(s)/Locator Code 2635-SCB | Unit 3322 | Date 10-23-97 |
| Reviewing (if Applicable) | | | ID. Number | Routed To | Referred To | Assigned To | By | Date |
| Case Status CLEARED | Clearance Type 1 Arrest  3 Unfounded 2 Exceptional 4 Open Pend | 2 | A-Adult J-Juvenile A | Date Cleared 1 0 2 3 9 7 | Job Number | Number Arrested 0 1 |

**NARRATIVE CONTINUATION**

| | | | Juvenile In Report | 1 Original 2 Supplement |
|---|---|---|---|---|
| Gang Related | | | | 2 |

| Date of Supplement | METRO-DADE POLICE DEPARTMENT | Agency Report Number | 4, 5, 7, 5, 8, 5, T |
|---|---|---|---|
| 1, 0, 2, 3, 9, 7 | | | |
| Original Date Reported | Original Primary Offense Description | Victim #1 Name | Original NCIC/UCR Code |
| 0 9 1 2 9 7 | Sexual Battery | | 110A |
| Original OFF/INC Location | Primary Offense Changed To | A-Attempted/ C-Committed | New NCIC/UCR Code |

mentioned to him that she was upset about not being hired by Dade County as a permanent employee. MR. HAMILTON could not provide any further information. At approximately 4:35 p.m. my interview with MR. HAMILTON was concluded.

On 10/3/97 at approximately 3:00 p.m., I was telephonically contacted at the Sexual Crimes Bureau by the Chief ████████ Division DAVID WHITE. MR. WHITE advised me that the subjects had retained attorney, EDWARD M. ROGERS to represent them in the case. MR. ROGERS' office is located at 1401 N.W. 17th Ave., Miami, Fla. 33125. Phone: 326-8880.

On 10/9/97 at approximately 2:40 p.m. I telephonically contacted the subjects' attorney, EDWARD ROGERS. I advised MR. ROGERS of the allegations made against the subject. MR. ROGERS stated that the subjects would not make a statement at this time.

On 10/23/97 at approximately 1:00 p.m. I met with Assistant State Attorney, LAURA URIARTE in her office. I provided A.S.A. URIARTE with the facts of the case. A.S.A. URIARTE stated that based on the following facts, she would not file the case: The incidents between the victim and the subjects were one-on-one with no witnesses. The victim made a delayed disclosure. The victim's statements were inconsistent and there is no corroboration. The subjects have denied the victim's allegations.

Based on A.S.A. URIARTE's decision not to file, the case is exceptionally cleared.

CASE DISPOSITION:      EXCEPTIONALLY CLEARED.

| Suspect Code | Code # | Offense Indicator | Residence Type | Citizenship | Drug Indication | Alcohol Indication |
|---|---|---|---|---|---|---|
| S - Suspect  A - Arrestee | | 1 #1  3 Both  2 #2 | 1 City  3 Florida  2 County  4 Out of State | | 1 Yes  8 Unknown  2 No | 1 Yes  8 Unknown  2 No |
| Drug Activity  S Sell  R Smuggle  K Dispenser  M Manufacturer  Z Other | | | Drug Type  N N/A  B Barbiturate  H Hallucinogen  F Paraphernalia  U Unknown | | | |
| A N/A  B Buy  D Deliver  Distribute  Producer/ | | | C Cocaine  M Marijuana  Equipment  Z Other | | | |
| P Possess  T Traffic  E Use  Cultivate | | | A Amphetamine  E Heroine  O Opium/Dir  S Synthetic | | | |

| D 1 Parent | Name of Parent or Custodian (Last, First, Middle) | | | | | | Residence Phone | |
|---|---|---|---|---|---|---|---|---|
| C 2 Legal Custodian | | | | | | | | |
| O Other | | | | | | | | |
| Address (Street, Apt. Number) | | | (City) | (State) | (Zip) | | Business Phone | |
| Notified By: (Name) | | | | Date | Time | Juvenile Disposition  1 Handled/Fingerpsed Within  Dept. and Released | 2 Turned Over to HRS/CYF  3 Incarcerated (County Jail) | |
| Released to: (Name) | | | Relationship | | | | Date | Time |
| Person/Unit Notified | | Time | | Related Report Number(s) | | | | |

| Officer(s) Reporting | | ID. Number(s)/Locator Code | Unit | Date |
|---|---|---|---|---|
| DETECTIVE L. VELKEN/rb | | 2635-SCB | 3322 | 10-23-97 |
| Officer Reviewing (If Applicable) | ID. Number | Routed To | Referred To | Assigned To | By | Date |

| Case Status | Clearance Type  1 Arrest  3 Unfounded  2 Exceptional  4 Open Pend | A-Adult  J-Juvenile | Date Cleared | Jail Number | Number Arrested |
|---|---|---|---|---|---|
| CLEARED | 2 | A | 10 2 3 9 7 | | 1 1 |